[Civ. No. 506. Fifth Dist. Nov. 4, 1965.]

PHILLIP K. LOWERY et al., Plaintiffs and Appellants, v. MARY PARKS ROBINSON, Individually and as Administratrix, etc., Defendant and Respondent.

Sims & Solomon and Gabriel Solomon for Plaintiffs and Appellants.

Siemon & Patterson and Bennett Siemon for Defendant and Respondent.

BROWN (R.M.), J.—This appeal originated in an action brought by the plaintiffs against the defendant to seek a larger distributive portion of the estate of an intestate decedent than they would otherwise be entitled to receive under the laws of succession.

The decedent, Pearl Lowery Winters, died intestate in 1957. Two branches of the family stem from her predeceased brother, John Lowery, and her predeceased sister, Arminta Parks. Surviving the decedent, Mrs. Winters, is the defendant, whose mother was Arminta Parks; also surviving her were the sons of John, namely, Phillip, Hugh, and James L. Lowery. Cornelia, a daughter of John, predeceased Mrs. Winters, but her two children, John Alexander and Jane Alexander Swayne, still live.

By right of representation, the defendant would be entitled to a 50 per cent share of the estate, while James L. Lowery and plaintiffs Phillip and Hugh are each entitled to

a one-eighth share; and plaintiffs John and Jane are each entitled to a one-sixteenth share.

The plaintiffs' case is predicated on the theory that following the death of Mrs. Winters the defendant entered into an oral contract with plaintiffs whereby defendant was to act as administratrix of the estate and promised that the residue would be divided into five equal parts, except that John and Jane would divide one-fifth equally.

In plaintiffs' complaint the first cause of action was based on the theory of an oral agreement to distribute the estate accordingly. The second cause is predicated on the theory of actual fraud in that it is alleged that the defendant had no intention of performing the agreement at the time she made it; and the third cause alleges a theory of constructive fraud on the premise that the defendant occupied a confidential and fiduciary relationship with the plaintiffs at the time she made the agreement.

After a nonjury trial there was a judgment in favor of defendant, and plaintiffs brought this appeal.

In the court's findings of fact it found in pertinent part, that the allegations of paragraph II of the second cause of action were not true, and by reference to the complaint found that it was not true that at the time defendant allegedly made the ''oral representations and promises to plaintiffs that she would petition the court to distribute said estate in five equal parts pursuant to their agreement, said defendant wilfully and knowingly made said representations and promises without any intention whatsoever of performing the same.'' The court also found that ''Defendant did not contract or agree with petitioners or any of them to divide the estate in five equal parts or in any manner other than provided by law'' and that ''No confidential or fiduciary relationship existed between petitioners or any of them and defendant.''

Plaintiffs do not challenge the sufficiency of the evidence to support the findings.

It is difficult for us to follow, or even formulate, the contentions which the plaintiffs do raise on this appeal. The first point seems to be that the case presents an unmixed question of law rather than a simple disputed question of fact. The question of law which the plaintiffs believe to be presented is not stated. They contend that the trial court did not perceive their theory, and that there was a lack of awareness by the court of the legal significance and critical importance

of the background, circumstances and relationships of the parties, relying on section 1647 of the Civil Code and section 1860 of the Code of Civil Procedure, with regard to interpretation of contracts. These sections are not applicable to the situation before us, where the court found that no contract at all existed. This matter referred to by the plaintiffs concerns the fact that the defendant lived at a distance from the decedent and the plaintiffs wanted to show how frequently she visited the decedent. This appears to be immaterial even though the court allowed plaintiffs to proceed with this line of questioning.

Plaintiffs set forth many points, most of which consist of one or two sentences, being mere suggestions of error without supporting argument or authority other than general abstract principles. None of them, except possibly ''Point Eleven'' which we will hereinafter discuss, sets out a proper ground of appeal. They merely evidence a dissatisfaction with the decision of the trial judge and are permeated with uncertainty and ambiguity. It is difficult to ascertain whether they argue that there was an express contract, an implied in law contract, or an implied in fact contract. For the purposes of this appeal, the judgment must be upheld if it is sustained by the findings.

The plaintiffs must bear the burden of showing that in the evidence upon which the findings are based there is no substantial conflict and that the facts and all inferences that may be drawn therefrom as found by the court are contrary to the evidence. (*Davis* v. *Lucas,* 180 Cal.App.2d 407, 409 [4 Cal.Rptr. 479].) The principal question on appeal is whether there is evidence to support the finding that there was no contract formed or existing.

It is the plaintiffs' position that on the one hand, the defendant agreed to act as administratrix of the estate and see that the residue was distributed in five equal parts rather than in shares as fixed by the laws of succession; and on the other hand, Phillip K. Lowery forbore to oppose her petition for letters and seek his own appointment as administrator, forbore to file a claim against the estate; and turned over to the defendant, after her appointment as administratrix, certain rings, including a diamond ring which had belonged to the decedent.

The evidence shows that the defendant petitioned for appointment and was appointed administratrix without objection. There is no evidence that Phillip advised her at the time

of any discussion prior to her appointment, or indeed at any time since, until the suit was filed, that he desired or intended to seek the appointment of himself as administrator. There is no evidence that defendant made any statements or promises in return for promises on his part to permit her petition to be granted unopposed or to refrain from seeking the issuance of letters of administration to him.

As to plaintiffs' belated contention, not raised until after suit was filed, that Phillip did not file a claim against the estate, there is no evidence that he advised the defendant that he had a claim, that he considered filing a claim, or that he forbore from filing any claim because of any promises.

Phillip had made his home with the decedent for many years prior to 1950 and had contributed to some of the household expenses and had, on occasion, paid the taxes on decedent's home; but he admitted that the decedent had never promised to pay for any services he had rendered or moneys he had expended in her behalf, and that, had the decedent lived, he would not have said that she owed him anything; that anything he did was out of the goodness of his soul.

Regarding the returning of certain rings which had been turned over to the defendant, the evidence shows that during the decedent's terminal illness in the hospital she had handed the rings to Phillip. In any event, Phillip testified that had she lived he would have given the rings back to her and that he, in fact, did deliver them without objection to the administratrix. There is no evidence that he claimed ownership of the rings as a gift from the decedent.

The comments of the trial judge made from the bench showed that the court understood and appreciated the theories of the plaintiffs, but did not subscribe to them. In fact, even the counsel for the plaintiffs agreed when he said: "I agree with the Court in this, incidentally, when it reaches the conclusion that delivery [of the rings] was a custodial delivery, . . ."

It is significant that there was a total lack of evidence that the defendant knew, or ought to have known, that Phillip was refraining from applying for letters of administration, making a claim against the estate for moneys expended and services rendered, or claiming ownership in the rings. ▪ As was said in the case of *Wine Packing Corp. of Cal.* v. *Voss,* 37 Cal.App.2d 528, 538 [100 P.2d 325]: " 'But the mere forbearance to sue without agreement to forbear, or the mere act of forbearance if not given for the promise, does not constitute a consideration.' "

In that case, a judgment was reversed on the ground that there was no evidence of an implied or express agreement to forbear.

There is no evidence to show any confidential relationship whatsoever. There was no evidence of a close familial relationship with the defendant, and in fact, the record is replete with evidence brought out by the plaintiffs that such relationships had not been harmonious prior to the death of the decedent, that there was a great deal of animosity between Phillip's father and the defendant, and plaintiffs' counsel admitted that he was attempting to show animosity. Plaintiffs cannot produce evidence at the trial of distrust, suspicion and animosity between the defendant and the plaintiffs and then, on appeal, complain because the court did not find a close confidential relationship of trust.

Plaintiffs contend (Point Eleven) that the trial court erred in making some of its findings of fact by referring to and adopting the allegations of certain numbered paragraphs of the complaint. It is argued that, under the authority of *Estate of Moore,* 143 Cal.App.2d 64 [300 P.2d 110], the error should be considered to be prejudicial requiring reversal of the judgment. *Moore* is not authority for such a broad proposition. There, the reviewing court stated that although the practice has been condemned, under the circumstances there under consideration, ''. . . the findings at bar cannot be held prejudicially erroneous.'' (P. 78.)

In *Vogelsang* v. *Wolpert,* 227 Cal.App.2d 102, at page 130 [38 Cal.Rptr. 440], the court said: ''The trial court in some instances has found that the allegations of certain numbered paragraphs of the complaint are true. This type of finding has been frequently approved in the past where the allegations referred to are clear and specific, as in the present case. [Citations.] It is still the rule.''

It is notable that plaintiffs do not point to any specific findings which they claim resulted in prejudice. Under these circumstances, the reviewing court is not obligated to winnow through a lengthy complaint and analyze the allegations there contained in the light of the findings as made. ▮ Suffice it to say, the court specifically found that no contract or agreement existed between the plaintiffs and the defendant; and that no confidential or fiduciary relationship existed between them. These specific findings effectively dispose of the first and third causes of action. By reference to clear and specific allegations of actual fraud contained in paragraph II

of the second cause of action and finding them to be not true, the trial court effectively disposed of that cause of action. Thus, there are sufficient clear findings to support the judgment.

The cases relied upon by the plaintiffs have not been overlooked. Some are cited for rules of construction or interpretation of ambiguous contracts, inapplicable to this case where the trial court found, upon ample evidence, that no contract existed. In some instances it would appear that the plaintiffs have plucked language from annotations obviously without reading the case. A reading of the opinions discloses that the holdings are against the position of the plaintiffs. For example, the *Estate of Moore, supra,* 143 Cal.App.2d 64, cited by plaintiffs, is against their position, when read in its entirety.

The following language, borrowed from the case of *Richard* v. *Richard,* 123 Cal.App.2d 900, at page 902 [267 P.2d 867], is applicable: "The rule is accurately stated in California Jurisprudence 2d (1952), Appeal and Error, section 481, page 313, thus: 'The headings should not only show the points involved in the appeal but should be so stated as to compel a reversal in the event that the points stated in the headings are well taken.' "

In the instant case, no points are stated. The method of stating general principles of law under headings of "Point One," "Point Two," etc. is adopted.

On page 902 of the last cited case it is further stated: "Error is never presumed, but must be affirmatively shown. [Citation.] It is incumbent upon an appellant to make it affirmatively appear that error was committed by the trial court. [Citations.] It is likewise settled that appellant has the burden of showing error. [Citation.]

"It is the duty of counsel to comply with the provisions of rule 15(a), Rules on Appeal, *supra.* The provisions of this rule are not mere technical requirements, but are prescribed for the purpose of facilitating disposition of cases upon appeal and directing the court's attention to the specific errors of law alleged to have been committed by the trial court. Not only must an appellant raise the point in his brief properly but he must point out the error specifically showing accurately wherein the lower court's action is deemed erroneous."

The judgment is affirmed.

Conley, P. J., and Stone, J., concurred.