**MASTER MORTGAGE INVESTMENT FUND, INC., Plaintiff,**

v.

**CHICAGO TITLE COMPANY, Defendant.**

**Civ. A. No. 91–2438–EEO.**

United States District Court, D. Kansas.

Jan. 27, 1993.

Christine L. Schlomann, Wirken & King, P.C., Kansas City, MO, John B. Pace, Carson & Coil, P.C., Jefferson City, MO, for plaintiff.

Robert W. Schuller, Morrison & Hecker, Kansas City, MO, Michael J. Grady, Edward T. Bullard, Gage & Tucker, A. Bradley Bodamer, Morrison & Hecker, Overland Park, KS, for defendant.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, District Judge.

This matter is before the court on the motion of defendant for summary judg-ment (Doc. # 85) in this suit for breach of contract. The material facts are not in dispute unless otherwise noted.

*Facts.*

1. Oppenheimer Industries, Inc. ("Oppenheimer"), and Westcal, Inc., engaged defendant Chicago Title Company to act as their escrow agent in the sale of Oppenheimer's land located in California (known as "the Clovis Property").

2. Prior to the sale, Oppenheimer held the Clovis Property in trust pursuant to a self-declaration of trust dated January 21, 1988. The beneficiaries of the trust were other business entities, including The Armendaris Corporation ("Armendaris"), a wholly-owned subsidiary of Oppenheimer. Oppenheimer was not a beneficiary under the trust agreement.

3. On May 31, 1989, plaintiff Master Mortgage Investment Fund, Inc. ("Master Mortgage"), loaned approximately $6.4 million to Oppenheimer and Armendaris as joint borrowers. The loan was secured in part by Oppenheimer and Armendaris pledging to Master Mortgage an interest in all "assigned proceeds," defined as

all of Borrower's right, title and interest in all funds and monies to which either borrower is or hereafter may be entitled or have any right to receive for its own use and not in trust for others pursuant to that certain Self–Declaration of Trust (hereafter called "Trust Agreement") dated January 21, 1988 and executed by Oppenheimer, a memorandum of which Trust Agreement was recorded as a document entitled "Memorandum of Self–Declaration of Trust" (hereafter called "Memorandum of Trust") in the Official Records of Fresno County, California.

Master Mortgage did not hold a mortgage on the Clovis property.

4. Chicago Title received its escrow instructions from Oppenheimer and Westcal on February 20, 1990. On April 4, 1990, Chicago Title requested that Master Mortgage report any claim it might have pertaining to the Clovis Property.

5. By letter dated May 8, 1990, counsel for Master Mortgage, Marcia Charney, demanded that Chicago Title "promptly remit at the close of escrow" the sum of $362,990.87, which was the entirety of the cash proceeds due Oppenheimer upon closing. With respect to the non-cash proceeds of the sale, the letter said: "We instruct that prior to closing, you provide to the undersigned a copy of the promissory note and deed of trust to be delivered at closing so that we can prepare the appropriate assignment documents and arrange with you to get the assignment documents executed at closing." The letter concluded with: "Please sign below acknowledging your agreement to proceed and deliver the above-described documents and funds in accordance herewith." The letter was countersigned by Chicago Title's Gwen Roberts, and returned to Charney on May 10, 1990. (The letter will be referred to in this discussion as "the Charney letter.")

6. Shortly after May 11, 1990, Charney received from Oppenheimer a copy of Oppenheimer's letter to Chicago Title advising that "the escrow demand of Master Mortgage is improper in that they are not entitled to an interest in non-cash proceeds, and you should not deliver a copy of the promissory note and deed of trust as requested." After receiving this letter, Charney and Master Mortgage took no further action and did not attempt to contact Chicago Title or Oppenheimer regarding Master Mortgage's claim.

7. The sale of the Clovis Property occurred on June 29, 1990. Chicago Title paid the proceeds to Oppenheimer.

*Discussion.*

 Plaintiff alleges that the Charney letter was a contract and that Chicago Title breached the contract when it paid the sale proceeds to Oppenheimer. Plaintiff concedes that there was no consideration to support the alleged contract, but asks that the court nonetheless enforce the terms of the letter against Chicago Title under the doctrine of promissory estoppel. In support of this theory, plaintiff suggests that it was induced by the Charney letter to neglect its rights and therefore Chicago

Title should be made to pay plaintiff to satisfy the debt owed plaintiff by Oppenheimer and Armendaris.

"It is a longstanding rule of law that for a contract to be enforceable it must be supported by consideration." *State ex. rel. Ludwick v. Bryant,* 237 Kan. 47, 697 P.2d 858, syl. 1 (1985). "In order for the doctrine of promissory estoppel to be invoked as a substitute for consideration, the evidence must show: (1) The promisor reasonably expected the promisee to act in reliance on the promise, (2) the promisee acted as could reasonably be expected in relying on the promise, and (3) a refusal of the court to enforce the promise would sanction the perpetration of fraud or some other injustice." *Mohr v. State Bank of Stanley,* 244 Kan. 555, 574, 770 P.2d 466, 481 (1989).

Master Mortgage asserts that its reliance on the Charney letter was detrimental because it was induced to take no action to protect its legal rights to the sale proceeds. Master Mortgage suggests that it could have sued for a constructive trust, injunctive relief, lis pendens, or declaratory judgment. However, the law in Kansas is clear: "Mere forbearance from suit or delay in collection of payments without an agreement to do so is not legal consideration." *State ex. rel. Ludwick v. Bryant,* 237 Kan. at syl. 4, 697 P.2d at syl. 4; *accord, e.g., Dobson v. Richard,* 17 Ark. App. 155, 705 S.W.2d 893, 895 (1986); *Lowery v. Robinson,* 238 Cal.App.2d 36, 47 Cal.Rptr. 495, 497 (1965); *see* C.J.S. *Contracts* § 108(b) (1963) ("[M]ere forbearance without any agreement to that effect is not a sufficient consideration for a promise of another, and it can make no difference that the act of forbearance was induced by the promise."); Annotation, *Validity of Promise Conditioned Upon Forbearance or Nonexercise of Right, Without An Agreement or Other Consideration By Promisee,* 74 A.L.R. 293 (1931) ("It is well-settled that mere forbearance to assert a legal right, without any request to forbear, or circumstances from which an agreement to forbear may be implied, is not a consideration which will support a promise."); *cf.*

*Union Nat'l Bank v. Schimke*, 210 N.W.2d 176, 179 (N.D.1973) ("Our courts have repeatedly held that in order for forbearance by the creditor toward the principal to be a sufficient consideration, there must be an agreement on the part of the creditor that he will forbear. Mere forbearance or omission on the part of the creditor to exercise his legal rights without any agreement to that effect is not sufficient, because he may at any moment and at his own pleasure proceed."). There is no evidence to support a conclusion that Master Mortgage agreed expressly or impliedly to forbear legal action against Chicago Title or any other party. The court therefore must find as a matter of law that consideration is lacking and the alleged agreement is unenforceable.

Moreover, the elements required to invoke promissory estoppel are not satisfied. Even assuming that Chicago Title should have reasonably expected Master Mortgage to rely on the Charney letter, under the circumstances, the reasonableness of Master Mortgage's reliance is dubious at best. Presumably, Master Mortgage is aware that an escrow agent may not perform acts or release funds if such acts are not authorized by the agreement for escrow or by both parties. *Osborn v. Grego,* 226 Kan. 212, 216, 596 P.2d 1233, 1237 (1979). Master Mortgage received a copy of Oppenheimer's letter to Chicago Title indicating that Master Mortgage's escrow demand was improper, at least to some extent. Master Mortgage knew of Oppenheimer's instructions to Chicago Title over a month before closing, yet made no inquiry and took no action. This strongly suggests that Master Mortgage's reliance on the Charney letter was unreasonable under the circumstances. Finally, and most importantly, as to the third element, the court is of the view that the interests of justice would *not* be served by enforcing the alleged contract. There is nothing equitable about requiring Chicago Title to pay the debt of Oppenheimer and Armendaris. Chicago Title was merely an escrow agent, and had limited knowledge of the financial arrangements between Master Mortgage and its borrowers. The court's refusal to enforce the alleged contract in this case cannot be said to sanction the perpetration of fraud or result in injustice. Accordingly, the court concludes that the Charney letter cannot be enforced under the doctrine of promissory estoppel.

■ It should be noted that while the foregoing analysis is equally applicable to (and dispositive of) plaintiff's claims pertaining to both the cash and non-cash proceeds, there is an additional, independent basis upon which to find for the defendant as to the non-cash proceeds. The Charney letter states: "We instruct that prior to closing, you provide to the undersigned a copy of the promissory note and deed of trust to be delivered at closing so that we can prepare the appropriate documents and arrange with you to get the assignment documents executed at closing." The Charney letter also requested that Chicago Title advise Master Mortgage whether Chicago Title would be handling collection and distribution of the additional payments to be made under the promissory note securing the balance of the sale price. The uncontroverted evidence demonstrates that Chicago Title did as requested. Although Master Mortgage now argues that Chicago Title was obliged to "effect" assignment of the non-cash proceeds, the unambiguous language of the Charney letter does not impose this duty on Chicago Title. Thus, even if the letter is deemed a valid and enforceable contract, there is no evidence to support a finding of breach as to the non-cash proceeds.

Accordingly, for the above stated reasons, the court concludes that the Charney letter is unenforceable for lack of consideration. Under the undisputed material facts, the defendant is entitled to summary judgment on plaintiff's claim for breach of contract.

IT IS THEREFORE ORDERED BY THE COURT that defendant's motion (Doc. # 85) is granted and summary judgment is to be entered in favor of the defendant and against the plaintiff on plaintiff's claim for breach of contract.