No. 49,668

ELEANORA M. LEWIS, ROBERT RAZO, and BARBARA RAZO, *Appellees,*
v. THE SHAWNEE STATE BANK OF SHAWNEE, KANSAS, *Appellant,* v.
ACTION, INC., REALTORS, *Third Party Defendant.*

(596 P.2d 116)

Opinion filed June 9, 1979.

*Lewis A. Heaven, Jr.* and *Roy S. Bennett, Jr.,* of Shawnee, argued the cause and were on the brief for the appellant.

*George W. Earnshaw,* of Ivan and Earnshaw, of Shawnee Mission, argued the cause, and *Janine Hassler,* of the same firm, was with him on the brief for the appellees.

The opinion of the court was delivered by

FROMME, J: Eleanora M. Lewis and husband sold a house on contract to Robert and Barbara Razo. Before the contract was performed the house was destroyed by fire. The seller, Eleanora M. Lewis, and the buyers joined as plaintiffs in a suit against the Shawnee State Bank, which had been designated the escrow agent for the parties in their contract. A judgment in the amount of $8,000.00 was obtained against the bank as escrow agent for failure to keep the property insured. The bank appeals on the

ground it had no duty or authority under the terms of the escrow agreement to insure the property.

Under the contract of sale the Razos, as purchasers, were to make monthly payments of $90.00, which sum was to cover principal, interest, annual taxes, and hazard insurance. During the first twelve months the contract was to be held in escrow by Action, Inc., a firm of realtors. Action, Inc. was to obtain payment of its sale commission by keeping the first twelve payments of principal and interest. Thereafter the Shawnee State Bank was to receive the payments as escrow agent.

When the property was sold to the Razos the premises were insured by Continental Western Insurance Company through the Al Klingle Agency. On August 1, 1975, Action, Inc., having received its entire commission on the sale, closed out its escrow account. All monies received by it were disbursed. The taxes and insurance premium for 1974 had been paid on receipt of invoices. On August 19, 1975, the bank assumed its duties as escrow agent and signed the following writing:

"CONSENT TO ACT AS ESCROW AGENT

"The Shawnee State Bank of Shawnee, Kansas agrees to act as Escrow Agent on the property located at 749 Shawnee Ave, Kansas City, Kansas, by and between Charles J. Lewis and Elenora [sic] M. Lewis, Sellers, and Robert Razo and Barbara Razo, Buyers, and hereby acknowledges receipt of the following:
1. Warranty Deed
2. Copy of this Agreement
3. Abstract

SHAWNEE STATE BANK

BY s/ A. M. Van Hercke
        V. P."

Mr. Lewis died on September 5, 1975. His interest in the contract passed to his wife. On the date of the funeral Al Klingle talked with Mrs. Lewis about the insurance on the house. Continental Western Insurance Company had terminated its agency contract with the Al Klingle Agency. The policy on the premises would expire September 15, 1975. J. Elliott, an employee of the Klingle Agency, visited with Mr. Razo and advised him that the existing policy would expire September 15, 1975.

If insurance coverage was to be continued on the premises a new application for insurance through another agent or to another company would have to be executed. The insurance would have

to be obtained by a party owning an insurable interest. *Cory v. International Indemnity Co.,* 124 Kan. 677, 261 Pac. 573 (1927). See also *Barton v. Mercantile Ins. Co.,* 127 Kan. 271, 273 Pac. 408 (1929). The depository bank had no insurable interest in the property.

Apparently nothing further was done by either Mrs. Lewis or Mr. Razo until in April, 1976, when Mrs. Lewis called the bank. The testimony as to what was said is conflicting. However, the bank wrote Mr. Razo advising him that no insurance policy on the house had been left with the bank. The bank requested that Mr. Razo bring his policy into the bank so a copy could be made and sent to Mrs. Lewis. He was also advised that he was behind on his payments.

Again the testimony as to what was done is conflicting, but Razo did appear at the bank and make a couple of payments on his contract. He did not have a policy but testified at trial that the bank was to take care of the insurance. A bank employee testified that Mr. Razo said he either had insurance or would take care of the insurance. A month later the house was destroyed by fire.

We must look to the contract giving rise to the escrow in order to determine the rights and duties of the parties. The "consent to act as escrow agent" executed by the bank on August 19, 1975, merely expressed the bank's consent to act, and acknowledged receipt of a deed, the contract for deed and the abstract of title. No insurance policy was delivered to the bank. Among other things the contract for deed provided:

"3. *The buyer agrees* to pay all taxes and assessments which become or could become a lien on the premises; to pay all indebtedness incurred by the acts of the buyer which may become a lien on the premises; *to keep the buildings on the premises insured in the amount of 8000.00 Dollars* and to the satisfaction and in a manner approved by the seller; to keep the premises in a good state of preservation and obtain the written consent of seller prior to alterations or additions.

. . . . .

"5. *It is mutually agreed* that the seller shall have the right to enter and inspect the premises at reasonable times; that *if the buyer* fails to keep the premises free of unpaid taxes, liens, and assessments, or *fails to insure* or to care for *the premises, seller may pay* such taxes, liens, assessments, cost of upkeep and *insurance* and all payment made therefor shall be forthwith due and payable from the buyer to the seller, *and the same shall bear interest while unpaid at the rate of eight per cent (8%) per annum;* that neither the buyer nor the seller will encumber the premises without the written consent of the other; that the Abstract or evidences of good title, this agreement, an executed Warranty Deed and all other papers in connection with this contract will be held by Shawnee State Bank as escrow agent . . . ." Emphasis supplied.

The contract was on a standard form adopted by the Real Estate Board of Johnson County, Kansas, 1954. Following the legal description of the property and added to the printed contract was typed the following:

"As a addition to this contract, by and between Charles J. Lewis and Eleanora M. Lewis the Sellers, and Robert Razo and Barbara Razo, the Buyers. Dated April 26, 1974.

"*Buyers agree to pay,* in addition to the Principle and Interest payment, *a amount sufficient to pay 1/12,* the annual Taxes and *Hazard Insurance, which will be held in Escrow,* by Action Inc., Realtors, for the first twelve months, and thereafter, *by the Shawnee State Bank, Escrow Agent*

"Sellers agree that the first twelve principle and interest payments, shall be retained by, Action Inc., Realtors, as payment of their commission for selling the property.

"All payments shall be due on the first of each month, and a 5% late charge shall be made on any payment made after the 10th of any month." Emphasis supplied.

The judgment was entered after a bench trial and was based upon certain findings and conclusions by the court, among which are the following:

"The court further finds from the evidence in this case that on or about April 30, 1976, the bank was called by Mrs. Lewis concerning the insurance; that she clearly conveyed her concern to the bank concerning lack of insurance on the premises and was assured by an agent and employee of the bank that the insurance matter would be taken care of. They had sufficient on hand having been paid to them by Mr. Razo to provide insurance coverage in this matter. After April 30, 1976, the bank did nothing other than to write a letter to Mr. Razo which is Defendant's Exhibit C and thereafter had a brief conversation with him at the bank, and during that conversation the bank should have ascertained from Mr. Razo if it didn't, in fact, obtain this information that there was no policy of insurance in effect at that time.

"Based upon all the facts, those stipulated and those found by the court, the court reaches the following conclusions of law:

". . . I would simply point out to counsel that there is also nothing precisely in the escrow contract, the real estate contract that says the escrow agent is to pay the money that they have received from Mr. and Mrs. Razo, directly to Mrs. Lewis, but they did that without any direct instructions. I think that is quite obvious that that was the intent of the parties. I think it is just as obvious when a bank collects money for taxes and insurance that all parties, including the escrow agent, realizes that that money is to be used for that purpose. . . .

". . . I'm convinced from the evidence in the case that certainly Mrs. Lewis did place the bank upon notice, that there was no insurance, did ask the bank to take care of that problem for her and protect her interest and expected the bank to act upon her communication. If the bank certainly had a legal duty as escrow agent, as agent for both parties to act upon her request and direction, they did not

need to consent to Mrs. Razo under this agreement. There is nothing under this agreement for Mrs. Razo to consent to a policy of insurance. It required under the terms of this agreement, that a policy of insurance be maintained. All they needed was the direction and request of one of the other of the parties. . . . I think the bank has legal responsibility to act within a reasonable period of time to ascertain the status of the insurance and to take action. I don't think a week to ten days would have been an unnecessary delay on the part of the bank but I think 30 to 40 days was an unnecessary period of time for them to take action and they breached the terms of their fiduciary or contractual relationship as escrow agent with Mrs. Lewis by not acting within a reasonable period of time in obtaining insurance for her.

. . . .

"I do not find that there was any obligation on the part of the defendant bank to insure any interest of Mrs. Razo, over and above the $8,000.00 hazard insurance that was a requirement of the contract of sale of real property. I find no evidence, the plaintiff has introduced no evidence that would have put the bank on actual or constructive notice that the Razos desired that the bank cover them with any other type of insurance other than found and contained in the real estate contract. It is true that Mr. Morrison, Action, Inc., knew the type of contract that Mrs. Razo previously had. He knew that they had a homeowner's insurance policy but I'm not convinced from the evidence that I have heard that he communicated to the bank the precise nature of the contract of insurance that they had, or related to the bank that he or Mrs. Razo or Mrs. Lewis conveyed to the bank that they desired to have that same type of insurance coverage."

The questions presented on appeal concern the extent of the duties imposed upon the bank as the depository of three instruments which were the subject of the escrow. Although the bank consented to act as escrow agent it merely acknowledged receipt of the three instruments. No instructions, oral or in writing, accompanied delivery of the instruments to the depository bank except what was said by Mr. Morrison of Action, Inc. He merely advised the bank that the insurance premium for 1974 had been paid on receipt of an invoice.

The contract for deed required the buyers to pay a certain sum each month to the depository bank. These payments included the anticipated cost of annual taxes and hazard insurance. The depository was not advised by the parties as to insurance, except to receive and hold these monthly payments. Under this contract the buyer (Razos) agreed to pay all taxes and to keep the buildings on the premises insured in the amount of $8,000.00 to the satisfaction and in a manner approved by the seller. Under the contract if the buyer failed to pay the taxes or insure the premises the seller was authorized to pay the taxes and insurance, and such payments with interest at 8% then could be recovered from the buyer.

In order to impose a duty, beyond that of mere safekeeping, upon an escrow depository in connection with papers or instruments left in its custody the delivery and receipt of the papers and instruments must be conditioned upon the performance of some act or the happening of some event expressed in the agreement for escrow. The conditions upon which an instrument is delivered in escrow need not be expressed in writing, but may rest in parol or be partly in writing and partly oral. *Shire v. Bank,* 112 Kan. 690, 213 Pac. 159 (1923); 28 Am.Jur.2d, Escrow § 5, p. 9. When an agreement to act as the depository of an escrow is executed or agreed upon the extent of the authority and duties of the depository are limited to those created by the agreement and no others. A depository may be guilty of conversion if it disburses the funds of another contrary to express instructions of the parties for whom the escrow was established. *Ford v. Guarantee Abstract & Title Co.,* 220 Kan. 244, 260, 553 P.2d 254 (1976); 30A C.J.S., Escrows § 8, p. 985.

In *Southern v. Chase State Bank,* 144 Kan. 472, 476, 61 P.2d 1340 (1936), 107 A.L.R. 944 (1937), it is pointed out:

"It is not the province of the escrow holder to interpret or construe a contract where he has a duty to perform. He must be guided in his duty by what the contract says. Neither is he authorized to ignore one part of the contract because another part of it omits such features as time and date."

In other words, the depository may not perform acts in handling the escrow papers which are not authorized by the agreement for escrow. A depository for its own protection should obtain specific authority from all interested parties before performing acts not authorized by the agreement for escrow. It is not within the province of a depository to interpret or construe the contract of the parties if its meaning is subject to question. The depository must be guided in carrying out its duty by what the contract says, for the agreement for escrow with its instructions constitutes the full measure of the duties and obligations assumed by the depository. The parties cannot expect more. 28 Am. Jur. 2d, Escrow § 16, p. 24.

Under a factual situation on all fours with our present case the Supreme Court of New York held the duty of the depository was limited to receiving and holding the amounts received for insurance until such time as the party obligated to insure the premises made demand and submitted a statement of amount due. In the

absence of such a demand the depository had violated no duty imposed upon it by the provisions of the agreement for escrow consented to by the depository. *Boyce v. National Commercial B. & T. Co. of Albany,* 41 Misc. 2d 1071, 247 N.Y.S.2d 521 (1964).

In our present case the contract required the buyer Razo to keep the premises insured. In event he failed to do so the contract provided that the seller Lewis had the right to insure the premises and collect the cost of the premium with interest at 8%. Neither party fulfilled his or her duties or responsibilities in this regard. Under the facts of the case the party obligated to insure the premises was advised by the insurance agent of the date the policy was to expire. The buyer Razo had the right to choose the company, the coverage, the amount and amount of the deductible, if any, subject "to the satisfaction and in a manner approved by the seller." The bank was not authorized by the contract to do those things and no duty was imposed upon the bank other than to receive the funds and hold them until such time as the buyer submitted a statement for the insurance premium. Only then could the premium for the insurance be paid safely by the depository. The bank had no duty or authority to obtain insurance on the premises and in the absence of such a duty the judgment entered by the district court cannot stand.

The appellees filed a notice of cross-appeal. In their brief they suggest that the trial court should have entered judgment for the full amount of their loss rather than to limit it to the amount of the insurance specified in the contract for deed. We do not agree. What has been said disposes of their entitlement to any damages. The cross-appeal is without merit.

Judgment reversed.