No. 49,760

RAYMOND L. OSBORN, JR., *Appellee,* v. GEORGE GREGO, JR., GEORGE GREGO, SR., and CHARLES GREGO, d/b/a G & G LANDSCAPING AND DESIGNS, *Defendants,* KENNETH A. BECKER and SHARON L. BECKER, *Appellees,* CAPITOL FEDERAL SAVINGS AND LOAN ASSOCIATION, *Appellant.*

(596 P.2d 1233)

Opinion filed July 14, 1979.

*Mark A. Meyerdirk,* of McCaffree & Grimshaw, Chartered, of Olathe, argued the cause and was on the brief for the appellant Capitol Federal Savings and Loan Association.

*Larry Winn, III,* of Lytle, Wetzler, Winn & Martin, of Prairie Village, argued the cause and was on the brief for the appellees Kenneth A. Becker and Sharon L. Becker.

The opinion of the court was delivered by

FROMME, J.: This appeal arises from a cross-claim for damages

filed by Kenneth A. and Sharon L. Becker against the Capitol Federal Savings and Loan Association based on an unauthorized release of escrowed funds.

Capitol Federal furnished permanent financing on a residence which was constructed for the Beckers. The home builder was Raymond L. Osborn, Jr. At the time of closing a few items required by the construction contract had not been completed. In order to close the sale and place the Beckers in possession, $7,000.00 from the proceeds of the loan were withheld from Osborn until all construction had been completed.

A writing signed by the Beckers was delivered to Capitol Federal evidencing the escrow agreement. The writing noted that the Beckers were purchasing the property from Osborn and in consideration of closing the mortgage loan and to facilitate the purchase of said property Capitol Federal agreed to hold $7,000.00 and pay the balance of the loan proceeds to Osborn. The sum of $7,000.00 was determined by Capitol Federal and Osborn to be sufficient to cover the cost of certain landscaping items not yet completed. The landscaping items were two decks, two patios, sod, sidewalk and 400 railroad ties. It was agreed that the stated amount was "held only for the items set out above" and Capitol Federal was to be the sole judge whether such items had been completed.

Later, on the same day as the closing, Osborn telephoned Capitol Federal and informed an employee, Charles Guth, that the parties had agreed to use only 200 railroad ties, and that the 400 figure was incorrect. In response to the call and without consulting the Beckers the 400 figure was changed in the written escrow agreement to 200 and the amount of money retained was changed to $5,600.00. The difference of $1,400.00 was paid to Osborn. This change in figures and additional release of funds were unauthorized by the Beckers.

The closing of the loan occurred on May 21, 1976, and by September 13, 1976, all the work and materials on the landscaping had been completed except for the railroad ties which were to be used to shore up the slope on the rear of the property. Some of the landscaping work was done by George Grego, Jr., George Grego, Sr., and Charles Grego, who later filed a subcontractor's lien against the premises for $5,805.00. The items constituting the lien included the costs of installing 530 railroad ties.

On September 14, 1976, Osborn presented the following release and authorization to Mr. Guth:

"FOR THE CONSIDERATION OF $2,500.00, the receipt and sufficiency hereof is hereby acknowledged, we, the undersigned, KENNETH A. BECKER and SHARON L. BECKER, husband and wife, hereby release RAYMOND L. OSBORN, JR. and LORETTA J. OSBORN, husband and wife from all claims we have under the terms and conditions of a contract to build a residence at 8603 Meadow Lane, Lenexa, Kansas, said contract being dated March 10, 1976.

"It is further understood and agreed that Raymond L. Osborn, Jr. shall settle any claim that may arise by virtue of a Mechanic's Lien filed by GNG Construction against said property, and such expenses as incurred in defending said lien shall be the sole expense of Raymond L. Osborn, Jr.

"WITNESS our hands this 13th day of September, 1976.

s/ Kenneth A. Becker

KENNETH A. BECKER

s/ Sharon L. Becker

SHARON L. BECKER

9/14/76

Sharon Becker, instructed me, per phone to release the 5600.00 that we were holding in escrow to Ray Osborn

C Guth"

As shown at the bottom of the release, before releasing the $5,600.00 to Osborn, Mr. Guth called Mrs. Becker who instructed him over the phone to release the $5,600.00 which Capitol Federal was holding. There is no question raised regarding authorization for this release of funds. The written release of the $5,600.00 was signed by the Beckers and they acknowledged receipt of $2,500.00, which we were informed on oral argument was paid to them for work undertaken and completed by them on the premises. This release dated September 13, 1976, acknowledges the existence of the outstanding claim of the Gregos, who were designated in the release as GNG Construction. The existence of a mechanic's lien was noted in the release and Beckers stated that it was "understood and agreed that Raymond L. Osborn, Jr. shall settle any claim that may arise by virtue" thereof, and "such expenses as incurred in defending said lien shall be the sole expense of Raymond L. Osborn, Jr."

Thereafter the Gregos filed their lien and Osborn filed suit to adjudicate its validity. The Gregos cross-claimed against both the Beckers and Capitol Federal to foreclose their lien. The Beckers in turn cross-claimed both against Osborn for his failure to pay the Gregos and against Capitol Federal for the unauthorized release of $1,400.00.

When the case came on for trial the court was advised by counsel for all parties that all matters raised by the pleadings had been settled with one exception. That exception was the cross-claim of Beckers against Capitol Federal. Apparently the Beckers' cross-claim against Osborn was settled. The Grego lien was settled and the Gregos were paid $3,000.00 in consideration of a full settlement and release of the mechanic's lien. Osborn and the Beckers contributed $1,500.00 each to secure that settlement.

The cross-claim of Beckers against Capitol Federal was tried to the court and a judgment for damages was entered against Capitol Federal. Capitol Federal appeals.

Capitol Federal argues that its action in releasing the $1,400.00 was ratified by the Beckers when they authorized the final release of $5,600.00 to Osborn and in exchange therefor accepted $2,500.00. It further argues that any damages suffered by the appellees, Beckers, were not proximately caused by the release of the $1,400.00 to Osborn. It further claims the Beckers failed to mitigate damages.

The appellees, Beckers, respond that the trial court properly held they were damaged as a result of appellant's unauthorized release of funds, and that there was no failure on the part of appellees to mitigate their damages. In response to appellant's argument that the appellees should have withheld authority to release the $5,600.00 until the Grego lien had been settled, the appellees state that no lien had been filed at the time of the release of funds. They further argue that any payments and liens due subcontractors were the responsibility of Osborn, and they took every reasonable precaution to see that these remained the responsibility of the builder, Osborn.

This last argument of appellees is untenable. The written release of the $5,600.00 on September 13, 1976, specifically referred to the mechanic's lien of GNG Construction (the Grego lien). When the Beckers authorized the release of the $5,600.00 to Osborn, knowing that the lien was outstanding, they then accepted Osborn's promise to settle the lien instead of holding back the $5,600.00, as they had a right to do. The settlement of the Grego lien was obtained by payment of $3,000.00. The obligation to settle the lien had continued to rest on Osborn and there is nothing in the agreed statement of facts which would shift this

burden to the Beckers. If the $5,600.00 had not been released on order of the Beckers the sum would have been adequate to cover the necessary amount needed to settle the Grego claim. It was being held for just such an eventuality.

Capitol Federal Savings and Loan Association became an agent of the Beckers when it accepted the duty of holding the $7,000.00 to assure completion of the contract. In fact, an escrow holder is the agent of both parties. *Nickell v. Reser,* 143 Kan. 831, 57 P.2d 101 (1936).

A depository may not perform acts or release funds while handling an escrow agreement if such acts are not authorized either by the agreement for escrow or by both parties. *Lewis v. Shawnee State Bank,* 226 Kan. 41, Syl. ¶ 4, 596 P.2d 116 (1979). When Capitol Federal released the $1,400.00 at the request of Osborn without obtaining the approval of the Beckers the release of funds was unauthorized. A depository must be guided in carrying out its duty by what the contract says, for the agreement for escrow with its instructions constitutes the full measure of the duties and obligations assumed by the depository. *Lewis v. Shawnee State Bank,* 226 Kan. 41, Syl. ¶ 5.

However, an unauthorized act of an agent may be ratified by a principal, and when ratified it is the equivalent of an original grant of authority. *Christy v. Central State Bank,* 118 Kan. 213, 234 Pac. 984 (1925); *Theis v. duPont, Glore Forgan Inc.,* 212 Kan. 301, Syl. ¶ 2, 510 P.2d 1212 (1973). On acquiring knowledge of the unauthorized act of an agent, the principal should promptly repudiate the act; otherwise it will be presumed he has ratified and affirmed the act. *Theis v. duPont, Glore Forgan Inc.,* 212 Kan. 301, Syl. ¶ 3.

When the Beckers authorized the release of the balance in the hands of their agent, Capitol Federal, on September 13, 1976, they knew the railroad ties had not been installed on the back of their property. They knew that the Gregos as a subcontractor had not been paid by Osborn and were claiming a mechanic's lien. The written release submitted to Capitol Federal so stated. In releasing the $5,600.00 to Osborn and accepting Osborn's personal agreement to settle with the Gregos, which Osborn was required to do anyway, the Beckers ratified the act of their agent in releasing the first $1,400.00. The written release was given for the acknowledged consideration of $2,500.00 which the Beckers

received from Osborn. Despite knowledge of the previous unauthorized release of the $1,400.00, the Beckers did not repudiate that payment, did not make demand for its return, and thereafter directed the release of the entire balance of the funds knowing that the contractor Osborn had not paid the Gregos for landscaping. Under these uncontradicted facts ratification occurred.

In addition to ratification there is an additional reason why the judgment for damages must be reversed. Damages are not recoverable for harm that a party should have foreseen and could have avoided by reasonable effort without undue risk, expense or humiliation. *Theis v. duPont, Glore Forgan Inc.,* 212 Kan. 301, Syl. ¶ 8. A party is under a disability to claim damages which he might have prevented. The Beckers should have foreseen and could have avoided having to personally furnish $1,500.00 to obtain the settlement with the Gregos. The Beckers were under no obligation to release the $5,600.00 which was being held by their agent, Capitol Federal. They could have without risk, expense or humiliation held the sum in escrow and then used the same to settle the $3,000.00 claim of the Gregos.

In case of a depository's noncompliance with the directions in an escrow agreement any loss suffered by the principal must be causally related and actually attributable to said act of noncompliance in order for the loss to be recoverable. The above rule is set forth in 30A C.J.S., Escrows § 11, p. 1004. The following cases support said rule: *Buffington v. Title Insurance Co. of Minnesota,* 26 Ariz. App. 97, 546 P.2d 366 (1976); *Common Wealth Ins. Systems, Inc. v. Kersten,* 40 Cal. App. 3d 1014, 115 Cal. Rptr. 653 (1974).

In the present case the loss, if any, was not attributable to the act of noncompliance. The $1,500.00 loss by the Beckers was attributable to their failure to require the $5,600.00 to be retained in escrow, and to their premature release of funds to the Osborns.

The judgment is reversed.