**Robert J. ECKHOLT, Plaintiff,**

v.

**AMERICAN BUSINESS INFORMATION, INC., et al., Defendants.**

**Civ. A. No. 93–2440–KHV.**

United States District Court, D. Kansas.

Nov. 23, 1994.

See also, 873 F.Supp. 510.

John M. Edgar, Steven E. Mauer, Matthew V. Bartle, Robert J. Hoffman, Bryan Cave, Kansas City, MO.

Heather Suzanne Woodson, Mark D. Hinderks, Roger D. Stanton, Stinson, Mag & Fizzell, Overland Park, KS, Elliot S. Kaplan, Robins, Kaplan, Miller & Ciresi, Minneapolis, MN.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

This matter comes before the Court on the *Motion of Counterclaim Plaintiff Business Communications and Information, Inc. for Partial Summary Judgment* (Doc. # 108). Plaintiff Robert J. Eckholt sued defendants American Business Information, Inc. ("ABI") and its subsidiary, American Business Communications, Inc. ("ABCI"), alleging various breaches of agreements, false promises and other claims arising out of an asset purchase agreement between Eckholt's company, Business Communications and Information, Inc. ("BCI"), as seller and ABCI as buyer. ABCI counterclaimed, alleging that Eckholt and BCI made fraudulent and negligent misrepresentations and fraudulent omissions in connection with ABCI's acquisition of BCI's assets. BCI, in turn, has counterclaimed on various theories. The only two that are the subject of this motion are (1) ABCI's alleged breach of an escrow agreement that was executed in connection with the sale of assets from BCI to ABCI and (2) ABCI's alleged conversion of BCI's escrow funds. BCI moves for summary judgment against ABCI on both claims.

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court considers all evidence and reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986). The nonmoving party, however, "may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990). Thus, summary judgment may be entered "against any party

who fails to make a sufficient showing to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

Having examined the record in light of the relevant law, the Court finds that BCI's motion should be sustained for the reasons stated below.

## I. *Facts* [1]

In connection with the asset purchase agreement they entered into on June 11, 1993, ABCI and BCI also executed an escrow agreement (the "Agreement"), which provided that ABCI would collect BCI's accounts receivable and pay certain of BCI's accounts payable. Only the accounts payable that BCI specifically deposited into the escrow account were to be paid by ABCI.

The Agreement required ABCI to use reasonable efforts to collect the receivables and pay the payables. It also required ABCI to disburse to BCI on or before December 20, 1993, the cash remaining in the account and the uncollected accounts receivable and prepaid expenses not yet credited. These amounts were to be determined as of November 30, 1993. The Agreement was to terminate upon ABCI's disbursement of the escrow funds to BCI on or before December 20, 1993.

On November 30, 1993, and still at the date of BCI's motion, the escrow account had a positive balance. ABCI's most recent calculation of the balance was $60,613.34.

Eckholt filed his lawsuit against ABI and ABCI on October 26, 1993. ABCI alleges that, by November 30, 1993, it had learned that Eckholt and BCI made fraudulent and negligent misrepresentations and fraudulent omissions in the course of the sale of BCI to ABCI. When it was determined that the escrow account had a positive balance, Jon Hoffmaster, a member of ABCI's Board of Directors, consulted with counsel for the company regarding the proper treatment of that balance. Elliot Kaplan, an attorney for ABCI, advised Hoffmaster that ABCI should hold the balance in the escrow account pending the resolution of the lawsuit filed by Eckholt, at which time a court could determine whether ABCI owed the money to BCI or whether it was entitled to keep the money because of its own claims.

Since November 30, 1993, ABCI has continued to collect accounts receivable and deposit them into the escrow account. BCI has made demand on ABCI to disburse the escrow funds, but ABCI has refused. ABCI has deposited such funds into the escrow account and has advised BCI that if any mistakes have been made in its performance under the Agreement, those mistakes will be corrected.

Because ABCI continues to hold the escrow funds after the date the Agreement was to terminate, BCI claims it is entitled to partial summary judgment on its claims for breach of the Agreement and for conversion of BCI's escrow funds. More specifically, BCI asks the Court to hold as a matter of law that ABCI is liable for actual damages for breach of contract and conversion. BCI does not seek summary judgment with respect to the amount of actual damages, or with respect to ABCI's liability for punitive damages.

## II. *Breach of Contract*

■ ABCI argues that the Escrow Agreement itself bars BCI from claiming a breach of contract, unless BCI can show that ABCI's actions constitute bad faith and willful misconduct or gross negligence. In support of this argument ABCI cites the provision in the Agreement in which BCI agrees

> ... to make no claim, and to bring no action, suit or proceeding, against [ABCI] by reason of any alleged loss, liability, claim or charge arising out of, or in connection with, [ABCI's] acceptance or performance (including acts and omissions), in good faith and without willful misconduct or gross negligence, of its duties and obligations under this Agreement....

Escrow Agreement, § 5(b)(i). ABCI construes this provision to shield it from any

---

1. The following facts are either uncontroverted or, where controverted, construed in the light most favorable to the nonmoving party. Immaterial facts and factual averments not properly supported by the record are omitted.

liability for breaching the contract as long as it does so in good faith and without willful misconduct or gross negligence.

As noted above, under the Section 3 of the Agreement, all activity in the escrow account was to be reconciled as of November 30, 1993, and by December 20, 1993, ABCI was to pay to BCI all amounts due *as of November 30, 1993*. Accordingly, by implication if not by the express language of the Escrow Agreement, ABCI's authority to collect accounts receivable expired on November 30, 1993.

■ As to funds which ABCI collected on or before November 30, 1993, the Court agrees that Section 5(b)(1) of the Escrow Agreement precludes the entry of summary judgment for breach of contract. The Agreement clearly protects ABCI from liability for acts and omissions committed in the performance of its duties and obligations under the contract "in good faith and without willful misconduct or gross negligence." Kansas courts have long recognized the validity of exculpatory agreements such as the one quoted above between BCI and ABCI. *Connolly v. Samuelson,* 671 F.Supp. 1312, 1317 (D.Kan.1987). Furthermore, parties are bound by the terms of their contracts even if those terms later turn out to be unwise or disadvantageous to them. *St. Francis Regional Medical Center v. Blue Cross Blue Shield of Kansas,* 810 F.Supp. 1209, 1218 (D.Kan.1992); *Belger Cartage Service v. Holland Constr. Co.,* 224 Kan. 320, 327–28, 582 P.2d 1111 (1978). Accordingly, Section 5(b)(1) may shield ABCI from liability if it acted with the requisite good faith and lack of willful misconduct and gross negligence. Whether it did so is of course a question of fact which the Court cannot properly determine as a matter of law on this record. Therefore BCI's motion must be overruled as to funds collected on or before November 30, 1993.

The story is quite different with respect to funds which ABCI admittedly collected after November 30, 1993. ABCI does not claim that such collections arose out of, or in connection with, the Escrow Agreement. Moreover, BCI has not demonstrated the existence of any agreement with respect to the collection and retention of funds after November 30, 1993. Accordingly, the Court must overrule its motion for partial summary judgment on this point.

### III. *Conversion*

In response to BCI's motion for summary judgment on its conversion claim, ABCI argues that conversion cannot be predicated on a "mere breach of contract." ABCI posits that in order to succeed in its conversion claim, BCI must demonstrate ABCI committed "additional wrongful acts" on top of its breach of the Escrow Agreement. That is not the law in Kansas.

■ In Kansas, it has been uniformly held that "conversion is an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another." *Temmen v. Kent–Brown Chevrolet Co.,* 227 Kan. 45, 605 P.2d 95, 99 (1980). An action for conversion may lie even if the escrow is cash rather than goods or chattels. *Jackson Cty. Bank, N.A. v. Allen,* 1987 U.S.Dist. LEXIS 8291 at *13 (D.Kan.1987). Kansas courts have also held that an escrow agent may be guilty of conversion if it violates the escrow agreement, exercises ownership without authorization, or acts in some other way that is inconsistent with its express duties under the contract. *Id.; Lewis v. Shawnee State Bank,* 226 Kan. 41, 596 P.2d 116, 120 (1979).

■ Although the Kansas Supreme Court in *Temmen* rejected an attempt to bring a conversion claim where the property alleged to have been converted was a "mere debt or chose of action," *Temmen,* 605 P.2d at 99, that rule does not apply in the context of escrow cases because of the "fiduciary relationship involved with escrow depositories." *Jackson Cty. Bank,* 1987 U.S.Dist. LEXIS 8291 at *13 n. 3. The basis for BCI's claim of conversion is substantively different from a "mere debt or chose of action" because BCI placed its property in the escrow account under ABCI's care for a specified period of time, and ABCI subsequently exercised dominion and control over that property and failed to return it as promised.

■ Accordingly, the Court finds that ABCI may be liable in conversion for its retention of escrow funds collected on or before November 30, 1993. Summary judgment on this issue is premature, however, because the Court has yet to determine whether the Agreement authorized ABCI hold such funds after December 20, 1993. Moreover, as noted above, the Court cannot determine that issue as a matter of law on this record.

■ Again, however, the situation is quite different with respect to accounts collected after November 30, 1993. BCI claims that ABCI's collection and retention of such funds constitutes "textbook conversion," and as a matter of law the Court must agree.

ABCI has advanced no colorable claim of authority to collect such accounts or to refuse to deliver them to BCI. Advice of counsel affords no shield from liability on these facts. First, the limited record on this subject suggests that ABCI never sought legal counsel with respect to amounts collected after November 30, 1993.[2] Second, ABCI's alleged right to rely on legal counsel is not justified by the escrow provision on which ABCI relies. That provision reads as follows:

> [ABCI] may seek the advice of legal counsel in the event of any dispute or question as to the construction of the provisions of this Agreement or its duties hereunder and may rely on an opinion of such counsel. In rendering such opinion, such counsel may rely on statements of fact furnished to them by persons reasonably believed by such counsel to be credible, and such counsel shall have no liability for the accuracy of the facts so relied upon, nor shall such counsel have any liability for matters of their own judgment forming a part of the process of providing such opinion.

Escrow Agreement, § 5(d). ABCI argues that because reliance on advice of counsel is permitted by the Agreement and because counsel advised ABCI to suspend any payouts to BCI under the escrow agreement, BCI is barred from asserting a conversion claim against it.

■ Again, the plain language of the Agreement belies ABCI's broad interpretation. While the Agreement permits ABCI to seek advice of counsel and to rely on it in performing its duties under the Agreement, without imposing any liability on counsel, the Agreement is not a license to steal. Moreover, even if counsel advised ABCI that it could properly refuse to pay out amounts due as of November 30, 1993, ABCI was not thereby authorized to unlawfully collect funds due BCI after November 30, 1993, and launder them through the escrow account so as to invoke the "advice of counsel" defense under Section 5(b)(1) of the Agreement.

The advice of counsel provision quoted above extends to disputes or questions as to the construction of the Agreement and to ABCI's duties under it. ABCI does not allege that there was any confusion as to its right to collect accounts receivable after November 30, 1993. ABCI's collection and retention of funds after that date did not arise from any advice of counsel concerning how the Agreement should be construed. Instead, ABCI simply asserted a private and unlawful right of pre-judgment attachment over BCI's property. As a matter of law, the Court must find that such conduct constitutes conversion and enter partial summary judgment in favor of BCI on this issue.[3]

**IT IS THEREFORE ORDERED** that the *Motion of Counterclaim Plaintiff Business Communications and Information, Inc. for Partial Summary Judgment* (Doc. # 108) be and hereby is sustained as to BCI's claim

---

**2.** Hoffmaster apparently sought advice only as to "proper treatment of [the] escrow balance" as of November 30, 1993. The affidavit of Steven Isenberg suggests that no one, much less a lawyer, told ABCI that it could receive and continue to cash checks after November 30, 1993.

**3.** ABCI seeks rescission of the asset purchase agreement between the parties on the theory that Eckholt and BCI fraudulently induced ABCI to enter into that agreement. If ABCI successfully proves its fraudulent inducement theory at trial and the asset purchase agreement is therefore rescinded, all of the other agreements related to the same transaction—including the Escrow Agreement—will also be nullified. In that case, no breach of contract action will lie, and BCI may not recover against ABCI for its breach of contract claim on the Escrow Agreement.

that ABCI converted sums collected after November 30, 1993, and otherwise overruled.