**PCR CONTRACTORS, INC., Appellant,**

v.

**Jacob DANIAL, Appellee.**

No. 2010–CA–000247–MR.

Court of Appeals of Kentucky.

Nov. 4, 2011.

Gregory P. Parsons, Cassidy Ruschell Rosenthal, Lexington, KY, for appellant.

John E. Davis, Lexington, KY, for appellee.

Before COMBS, MOORE, and NICKELL, Judges.

## OPINION

MOORE, Judge:

PCR Contractors, Inc., appeals from summary judgment entered by the Fayette Circuit Court in favor of Appellee, Jacob Danial, on PCR's claims against Danial for fraudulent and negligent misrepresentation. Both claims were based upon an alleged promise by Danial to personally guarantee payment to PCR relating to a contract PCR entered into with a company that Danial partly owned and comanaged, Lexington Holdings One, LLC. After careful review, we affirm the circuit court's decision to dismiss PCR's claim of negli-

gent misrepresentation, but reverse that part of the circuit court's decision dismissing PCR's claim of fraudulent misrepresentation and remand this matter for further proceedings.

## I. FACTUAL AND PROCEDURAL HISTORY

On or about July 21, 2006, Lexington Holdings and PCR executed two contracts, designated "Contract A" and "Contract B," to construct two buildings, designated "Building A" and "Building B," on land owned by the University of Kentucky. Together, these buildings were to be named "The Lexhold International Center for Technological Innovation." Kale Roscoe, a comanaging member of Lexington Holdings, executed the PCR–Lexington Holdings contracts on behalf of that entity. Paolo Collavino is the president of PCR and executed these contracts on PCR's behalf.

In early 2007, before Building A was finished and any ground had been broken on Building B, the two entities proceeded to file suit against each other in Fayette Circuit Court, each declaring that the other had materially breached its contract. In 2009, this litigation culminated in a judgment in favor of PCR of $1,526,139.94, along with post-judgment interest accruing annually. To date, this amount remains unpaid.

In conjunction with its suit against Lexington Holdings, PCR also filed suit against Jacob Danial, a part-owner of Lexington Holdings and one of its comanaging members. PCR attempted to recover from Danial based upon theories of fraudulent misrepresentation, negligent misrepresentation, and breach of contract. PCR claimed that Danial intentionally or negligently misrepresented that he would personally guarantee Lexington Holdings' ob-

ligations under Contracts A and B, and that his alleged misrepresentation induced PCR to contract with Lexington Holdings.

In further support of its allegations, PCR filed a document, styled "Affidavit of Mario Collavino," in the record. By way of background, Mario Collavino is the father of PCR's president, Paolo Collavino, and PCR refers to Mario Collavino as its "consultant." And, according to the pleadings and evidence of record in this matter, Mario Collavino and Danial were friends, former neighbors, and have a history of working together. Collavino describes in his affidavit that he had several meetings and conversations with Danial prior to the time when PCR entered into the contract with Lexington Holdings; that Collavino was hesitant to advise PCR to enter into a contract with Lexington Holdings because Kale Roscoe, Danial's comanaging member, had refused to pay another Collavino company for work under an unrelated contract until the Collavino company filed suit; that during the course of Collavino's discussions with Danial, Danial represented that he would provide a personal guaranty for Lexington Holdings' contractual obligation to PCR and ensure that funding would be available to pay PCR for any sums owed to it under the contracts; and that "Without Danial's promise to guarantee the Contracts, PCR would not have entered into contracts with Lexington Holdings."

PCR also pointed to where Danial acknowledged in his deposition that he had met with Mario Collavino regarding the PCR–Lexington Holdings contracts prior to the time when they were executed, and also cited to the following provision contained in the executed contract:

It is hereby acknowledged by the Owner [Lexington Holdings] that this contract and all amounts owing pursuant thereof shall be personally guaranteed by Jacob Daniels [sic] under separate written document.

In his answer and in a subsequent motion for summary judgment, Danial raised the statute of frauds, Kentucky Revised Statute(s)(KRS) 371.010, as an affirmative defense to each of PCR's theories, pointing out that he had never signed the PCR–Lexington Holdings contract or executed any written guaranty relating to it. Danial argued that promises or representations relating to a party's future intentions are never actionable as either fraudulent or negligent misrepresentations. Danial also argued that PCR had failed to plead fraud with particularity, per Kentucky Rule(s) of Civil Procedure (CR) 9.02.

In disposing of this matter, the trial court held that PCR had pled fraud with particularity. Additionally, the circuit court's order states in relevant part:

1. The Court finds that ... Defendant Jacob Danial did not provide a written guarantee to PCR Contractors USA, Inc., but for the purposes of this Motion for Summary Judgment, Danial did orally agree to provide a personal guarantee at some future date.

2. The Court finds that KRS 371.010 (Kentucky's Statute of Frauds) does not bar PCR's claims of fraudulent or negligent misrepresentation.

3. The Court finds that Danial's future promise or representation cannot form the basis of PCR's claims of fraudulent misrepresentation, therefore those claims are dismissed with prejudice.

4. The Court finds that Danial's future promise or representation cannot form the basis of PCR's claims of negligent misrepresentation, therefore those claims are dismissed with prejudice.

That said, the circuit court's order of summary judgment dismissed the balance of PCR's claims. PCR now appeals the

circuit court's decision, but only as it relates to its claims of fraudulent and negligent misrepresentation.

## II. STANDARD OF REVIEW

Summary judgment serves to terminate litigation where "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56.03. It should be granted only if it appears impossible that the nonmoving party will be able to produce evidence at trial warranting a judgment in his favor. *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476 (Ky.1991). Nevertheless, summary judgment "is proper only where the movant shows that the adverse party cannot prevail under any circumstances." *Id.* at 479 (citing *Paintsville Hosp. Co. v. Rose*, 683 S.W.2d 255 (Ky.1985)). And, it is well established that a party responding to a properly supported summary judgment motion cannot merely rest on the allegations in his pleadings, but must, by counter-affidavit or otherwise, show that evidence is available justifying trial of the issue involved. *Continental Casualty Co. v. Belknap Hardware & Manufacturing Co.*, 281 S.W.2d 914 (Ky.1955).

■ On appeal, we must consider whether the circuit court correctly determined that there were no genuine issues of material fact and that the moving party was entitled to judgment as a matter of law. *Scifres v. Kraft*, 916 S.W.2d 779 (Ky.App.1996). Because summary judgment involves only questions of law and not the resolution of disputed material facts, an appellate court does not defer to the circuit court's decision. *Goldsmith v. Allied Building Components, Inc.*, 833 S.W.2d 378 (Ky.1992). Our review is *de novo*.

## III. ANALYSIS

### 1. Fraudulent misrepresentation

■ As noted, the trial court held that for the purpose of summary judgment: 1) Danial did orally agree to provide a personal guarantee at some future date; 2) Kentucky's statute of frauds, KRS 371.010, does not bar PCR's claim of fraudulent misrepresentation; but 3) "Danial's future promise or representation cannot form the basis of PCR's claims of fraudulent misrepresentation."

■ Danial interprets the third point of the trial court's order to mean that future promises in general can never form the basis of a claim of fraudulent misrepresentation. Danial believes that this is a correct statement of the law. However, the trial court would have erred if that were indeed its holding. As stated in *Bear, Inc. v. Smith*, 303 S.W.3d 137, 142 (Ky.App.2010),

In Kentucky, a party claiming harm resulting from fraud in the inducement must establish six elements of fraud by clear and convincing evidence as follows: a) material representation b) which is false c) known to be false or made recklessly d) made with inducement to be acted upon e) acted in reliance thereon and f) causing injury. *United Parcel Service Co. v. Rickert*, 996 S.W.2d 464, 468 (Ky.1999). In addition, "a misrepresentation to support an allegation of fraud must be made concerning a present or pre-existing fact, and not in respect to a promise to perform in the future." *Filbeck v. Coomer*, 298 Ky. 167, 182 S.W.2d 641, 643 (1944). *See also, Kentucky Electric Development Co.'s Receiver v. Head*, 252 Ky. 656, 68 S.W.2d 1, 3 (1934) ("An accepted rule is, a misrepresentation, to be actional, must concern an existing or a past fact, and

not a future promise, prophecy, or opinion of a future event, *unless declarant falsely represents his opinion of a future happening.*"); *see also Major v. Christian County Livestock Market*, 300 S.W.2d 246, 249 (Ky.1957) ("*One may commit 'fraud in the inducement' by making representations as to his future intentions when in fact he knew at the time the representations were made he had no intention of carrying them out*[.]")

(Emphasis added).

Danial disagrees with the second point of the trial court's order, arguing that the statute of frauds precludes any claim of fraudulent misrepresentation based upon an oral promise or contract. This argument is also misplaced. As stated in *Hanson v. American Nat. Bank & Trust Co.*, 865 S.W.2d 302, 307 (Ky.1993),[1]

The essential element in an action for fraud is not whether the representation is the consideration for contract for which a separate action may lie. 'Since a promise necessarily carries with it the implied assertion of an intention to perform it follows that a promise made without such intention is fraudulent and actionable in deceit ... This is true whether or not the promise is enforceable as a contract.' Restatement (Second) of Torts § 530 Comment c (1976).

To the same effect, the quoted authority behind this proposition of law in *Hanson*, the Restatement (Second) of Torts § 530 Comment c (1976), further provides:

If the agreement is not enforceable as a contract, as when it is without consideration, the recipient still has, as his only remedy, the action in deceit ... *The same is true when the agreement is oral and made unenforceable by the statute of frauds*, or when it is unprovable and so unenforceable under the parol evidence rule.

(Emphasis added).

As it is written, the trial court's order does not misapply either of these general principles of law. Rather, the narrow scope of the language the trial court employed in its order is that "*Danial's* future promise or representation cannot form the basis of PCR's claims of fraudulent misrepresentation." Stated differently, a review of the record in this matter reflects that in rendering summary judgment in favor of Danial, the trial court 1) presumed that Danial had promised to guarantee payment to PCR; but 2) believed that the evidence of record did not sufficiently demonstrate that Danial lacked the intent to fulfill that promise at the time that he allegedly made it.[2]

---

1. *Overruled on other grounds by Sand Hill Energy, Inc. v. Ford Motor Co.*, 83 S.W.3d 483 (Ky.2002).

2. The trial court elaborated upon its holding during the oral arguments relating to Danial's motion for summary judgment, stating in relevant part:

   I come back to what proof do you have to establish false representation of an existing intention and I do not find the fact that we have a dispute—whether or not the statement was ever made—I do not find that to rise to the level of a factual dispute that would take this out of a motion for summary, okay? So, because for purposes of this, I'm assuming the statement was made. I just want to make, be very clear about that. I'm assuming the statement was made. Um, now, so then we look at [Danial's] next statement of, "I would never have done that." Do I find that to be sufficient to establish fraud at the beginning so that he was never going to do it? I mean, I think, I find that statement to be "I would never have signed the guaranty," not that I would have ever pursued getting the guaranty or signing the guaranty. I—I still believe this is a, um, a future promise that, um, that falls outside the category of fraud and therefore I'm going to sustain the motion for summary judgment.

■ In effect, the substance of the trial court's holding touches upon one of the more fundamental rules of fraud: For a representation to qualify as a fraudulent misrepresentation, the party making the representation—at the time of making it—must know the representation is false or make it recklessly without any knowledge of its truth. *Presnell Const. Managers, Inc. v. EH Const., LLC,* 134 S.W.3d 575, 580 n. 16 (Ky.2004) (citing *Cresent Grocery Co. v. Vick,* 194 Ky. 727, 240 S.W. 388, 389 (1922)). This rule applies equally to representations of a declarant's present intent to perform a future promise. *See, e.g., Bear, Inc.,* 303 S.W.3d at 143–44. Thus,

> If the statement is honestly made and the intention in fact exists, one who acts in justifiable reliance upon it cannot maintain an action of deceit if the maker for any reason changes his mind and fails or refuses to carry his expressed intention into effect. If the recipient wishes to have legal assurance that the intention honestly entertained will be carried out, he must see that it is expressed in the form of an enforceable contract, and his action must be on the contract.

Restatement (Second) Torts § 530 cmt. b (1976).

As such, the questions presented in this matter are two-fold: 1) does any evidence of record sufficiently demonstrate that Danial made a promise to guarantee payment to PCR? And, if so, 2) does any evidence of record sufficiently demonstrate that Danial had no intention of keeping that promise at the time that he made it?

Turning to the first of these questions, Mario Collavino stated in his affidavit that he had had several meetings and conversations with Danial regarding the PCR–Lexington Holdings contract prior to the time when it was executed, and that

Danial represented to [him] that he would provide a written personal guaranty for Lexington Holdings' contractual obligation to PCR and represented to [him] that he personally would make sure that funding was available to pay PCR for sums it would be owed under the Lexington Holdings Contracts.

Furthermore, PCR points to a provision in its contract with Lexington Holdings that recites, "It is hereby acknowledged by [Lexington Holdings] that this contract and all amounts owing pursuant thereof shall be personally guaranteed by Jacob Daniels [sic] under separate written document."

In his deposition, Danial verified that he understood Mario Collavino would be involved with PCR's decision to enter into the PCR–Lexington Holdings contract; that he had met with Mario Collavino on behalf of Lexington Holdings before the PCR–Lexington Holdings contract was executed; and that at the time of those meetings he was at least aware that Mario Collavino had been involved in a prior dispute with Danial's comember, Kale Roscoe.

In his separate deposition, Kale Roscoe, Danial's comember in Lexington Holdings, also testified that Danial had recommended that Lexington Holdings employ PCR for the project. Roscoe further testified:

> Danials [sic] and [Mario] Collavino. They're friends. They both live in Canada there and, you know, and—you know, he's—Danials [sic] sold Collavino a building and Collavino felt like Danials [sic] beat him and, you know, they got this thing on—going on all the time between the two of them. And I—you know, I—I don't get into it, you know. So I originally met Collavino through Danials [sic]. He brought Collavino to me originally years ago. So, you know,

they—they've got this on-and-off relationship going on for the past 20 years.

■ Aside from Danial's alleged representation as related in Mario Collavino's affidavit, the sum of this evidence is circumstantial in nature. The trial court merely answered the question of whether this evidence was sufficient for a reasonable trier of fact to find that Danial had in fact represented that he would guarantee payment to PCR with a hypothetical "yes." Nevertheless, this evidence is sufficient to support such a finding. In *Johnson v. Cormney*, 596 S.W.2d 23, 27 (Ky.App. 1979),[3] this Court explained:

[I]t is not necessary that direct evidence of fraud be adduced and that fraud may be established by evidence which is wholly circumstantial. 37 C.J.S. Fraud [§ ] 115; and *Campbell v. First National Bank of Barbourville*, 234 Ky. 697, 27 S.W.2d 975 (1930). The courts of this Commonwealth have long recognized that "(p)arties contemplating the commission of fraud do not usually blow a horn or beat a drum to call attention to what they are doing," and have accordingly held that frauds may be established by circumstances. *Bolling v. Ford*, 213 Ky. 403, 281 S.W. 178 (1926). Further, even though each bit of circumstantial evidence in and of itself may seem trivial and unconvincing, the combination of all the circumstances considered together may be decisive in a given case of fraudulent design. 37 C.J.S. Fraud [§ ] 115.

As to the second question (*i.e.*, whether any evidence of record could sufficiently support that Danial had no intention of keeping that promise at the time that he allegedly made it) we disagree with the trial court's conclusion that no such evidence exists to defeat summary judgment. In his affidavit, Collavino averred that Danial had agreed to personally guarantee payment. Danial, to the contrary, not only disputed making any promise to guarantee payment to PCR; he also further testified that he would never make such a guarantee:

Q: But this you say you remember specifically that didn't happen?

Danial: It's an important thing, you know, so one reason is, one thing I wouldn't guarantee such a thing, you know, being a business person. And the second thing is, I had concerns about Collavino's ability to get a bond, so I did not want—you know, my recommendation to Kale was not to use Collavino. If that is the case, why would I want to guarantee his payment anyway?

Moreover, assuming Danial did make this promise and did so without the present intent of keeping it, there is at least an issue of fact as to whether PCR's reliance upon it was reasonable and justified. As Roscoe noted in his deposition, and as Danial acknowledged in his own deposition and repeats in his appellate brief, Danial and Collavino had been "old friends" for over twenty years and had done business with each other on occasions prior to the execution of this contract and the making of this alleged misrepresentation. For the question before this Court, these facts also support PCR's argument. *See, e.g., Cline v. Allis–Chalmers Corp.*, 690 S.W.2d 764, 767 (Ky.App.1985) (holding that a factor in determining whether a person exercised ordinary care in relying upon the misrepresentation of another party is the extent of confidence that person was entitled to

---

**3.** *Overruled on other grounds by Marshall v. City of Paducah*, 618 S.W.2d 433 (Ky.App. 1981).

place in the other, which could be developed from a prior course of dealing).

In short, it is for the trier of fact to resolve whether the evidence supporting that Danial actually made that promise is more convincing than the evidence to the contrary. As such, summary judgment was inappropriate.

As an afterthought, Danial also reasserts that PCR failed to state a claim of fraud with particularity in this matter, per CR 9.02. We disagree and conclude that PCR's pleadings in this matter, taken with the sum of the evidence in the summary judgment record, adequately state a prima facie claim of fraudulent misrepresentation in conformity with the requirements of the Civil Rules.

## 2. Negligent Misrepresentation

■ In *Presnell Const. Managers, Inc.*, 134 S.W.3d 575, the Supreme Court of Kentucky adopted the tort of negligent misrepresentation, as defined in Restatement (Second) of Torts § 552 (1976). Section 552 was quoted in *Presnell*, 134 S.W.3d at 580, as follows:

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

PCR asserts that Danial's alleged statements of future intent, discussed previously, could also serve as the foundation of a negligent misrepresentation claim. This is because, as PCR reasons, negligent misrepresentation is always a lesser included claim of fraudulent misrepresentation. No authority from this Court, or the Supreme Court of Kentucky, supports this proposition. With that in mind, PCR cites to 37 Am.Jur.2d *Fraud and Deceit* § 128 (2011), specifically its author's commentary, for support:

**Observation:** "Negligent misrepresentation" is a lesser included claim of fraudulent misrepresentation, and it differs from fraudulent misrepresentation only in that, while the latter requires knowledge that the pertinent statement was false, the former merely requires that the person who made the statement failed to exercise reasonable care or competence to obtain or communicate true information.[FN8]

[FN8 *Fleming Companies, Inc. v. GAB Business Services, Inc.*, 103 F.Supp.2d 1271 (D.Kan.2000).]

However, tracing the law behind the author's statement, above, actually leads to persuasive authority supporting that a statement of future intent, such as the one at bar, does not qualify as a "misrepresentation" in the context of Section 552. We begin with *Fleming Companies, Inc. v.*

*GAB Business Services, Inc.,* 103 F.Supp.2d 1271 (D.Kan.2000), which indeed states:

> Negligent misrepresentation is a "lesser included" claim; it differs from fraudulent misrepresentation only in that, while the latter requires knowledge that the statement was false, the former merely requires that the person who made the statement failed to exercise reasonable care or competence to obtain or communicate true information.

*Id.* at 1276 (quoting *Eckholt v. American Bus. Info., Inc.,* 873 F.Supp. 510, 517–18 (D.Kan.1994)).

■ Like Kentucky, Kansas has also adopted the Restatement (Second) of Torts § 552 (1976). *See Mahler v. Keenan Real Estate, Inc.,* 255 Kan. 593, 876 P.2d 609 (1994). However, the *Eckholt* Court, upon whose opinion *Fleming* relied, further held that "if one making representations had a present intention not to perform them, the aggrieved party's claim would properly and logically be one for intentional misrepresentation ... not one based on negligence." *Eckholt v. American Bus. Info., Inc.,* 873 F.Supp. 526, 532 (D.Kan.1994) [4] (quoting *Badger Pharmacal, Inc. v. Colgate–Palmolive Co.,* 1 F.3d 621, 628 n. 7 (7th Cir.1993)).

The Supreme Court of Kansas later agreed with *Eckholt*'s analysis of Section 552 and further elaborated upon that section in *Gerhardt v. Harris,* 261 Kan. 1007, 934 P.2d 976 (1997):

> The comments to § 552 show that negligent misrepresentation applies to suppliers of commercial information in favor of users of such information in their commercial transactions. Restatement (Second) of Torts § 552, comment a. The comments include such examples as negligent audits furnished to relying parties in a financial transaction, negligent engineer reports relied on by contractors bidding for construction work, and negligent land surveys relied on by parties to real estate contracts. Restatement (Second) of Torts § 552, comments e and h.

*Id.* at 984.

The *Gerhardt* Court noted that the defendant in that matter, an attorney named Harris, disputed that he had made a representation to be bound to a promise. The Court reasoned that Harris had, therefore, admitted that he did not intend to be bound at the time that he allegedly made the promise. However, the Court further held that Harris's alleged promise could only provide the basis of a claim of fraudulent misrepresentation, rather than a claim of negligent misrepresentation per § 552. In distinguishing negligent misrepresentation from a claim of fraudulent misrepresentation in the context of future promises, the Court noted that, unlike § 530 of the Restatement, which defines the tort of fraudulent misrepresentation,

> § 552 does not, by its terms, apply to misrepresentation of intention to perform an agreement. Nor do the illustrations to § 552 apply to other than typical cases of misrepresentation of factual, commercial information. The Comments to § 530 specifically state that where there is no viable action on the contract, the exclusive remedy for mis-

---

4. There are four decisions of the United States District Court regarding the subject matter of *Eckholt v. American Bus. Info, Inc.*: 1) *Eckholt v. American Business Information, Inc.,* 873 F.Supp. 507 (D.Kan.1994) (rendered December 2, 1994); 2) *Eckholt v. American Business Information, Inc.,* 873 F.Supp. 510 (D.Kan.1994) (rendered December 2, 1994, and quoted above); 3) *Eckholt v. American Business Information, Inc.,* 873 F.Supp. 521 (D.Kan.1994) (rendered Nov. 23, 1994); and 4) *Eckholt v. American Business Information, Inc.,* 873 F.Supp. 526 (D.Kan.1994) (rendered December 15, 1994, and also quoted above).

representation of intention to perform an agreement lies in the action for deceit. . . . A merely negligent misrepresentation of a maker's own intention is not actionable under § 530 for the reason that in the absence of any fraudulent intent . . . there is no misrepresentation of any existing fact on which any action for negligent misrepresentation could be based.

*Gerhardt,* 934 P.2d at 986 (quoting *City of Warrensburg, Mo. v. RCA Corp.,* 571 F.Supp. 743, 753 (W.D.Mo.1983)).

As in *Gerhardt* and the cases cited therein, the nature of Danial's alleged promise to guarantee payment to PCR is such that Danial either knew at the time it was made that he had no intention of fulfilling it, or he intended at that time to fulfill it. Thus, assuming PCR proved that Danial made a promise that he never intended to carry out, Danial did not make the promise carelessly; rather, he made it knowing that it was false. In addition, we find that the ultimate reasoning of *Gerhardt* and the cases cited therein—that a party's intent to perform a promise or an agreement cannot form the basis of a negligent misrepresentation claim in any event—is a sound interpretation of Section 552, and is, therefore, consistent with Kentucky law. Thus, we find no error in the trial court's decision to dismiss this latter claim.

## IV. CONCLUSION

For these reasons, we affirm the decision of the Fayette Circuit Court's decision to dismiss PCR's negligent misrepresentation claim against Danial, reverse its decision to dismiss PCR's fraudulent misrepresentation claim, and remand this matter for further proceedings.

NICKELL, Judge, Concurs.

COMBS, Judge, Concurs In Result Only.