## Filbeck et al. v. Coomer et al.

September 26, 1944.

168

H. H. Lovett for appellants.

Prince & Cox and C. A. Wickliffe for appellees.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER —Reversing.

About twenty years ago B. S. Coomer departed from the State of Kentucky, leaving his wife and six children. Prior to that time, his wife, Nora Coomer, joined with him in the execution of a mortgage on his small farm to secure the payment of a note in the sum of One Hundred Sixty Dollars ($160). About seven or eight years later his wife instituted an action against him as a non-resident, alleging that she had been compelled to pay the note which thereupon was assigned to her, and asked that the farm be sold to satisfy the debt. During the pendency of the action, Coomer returned to Kentucky and was commited to an insane asylum, where he died on March 30, 1930. In June, 1930, one of the appellants, Fred Filbeck, filed an intervening petition alleging that Ninety-One Dollars and Twenty-Five Cents ($91.25) of the above mentioned note had been assigned to him on his claim for funeral expenses. No personal representative was appointed for Coomer, but the action was revived against all the heirs by appearances or otherwise. A guardian ad litem was appointed for Laura Coomer and Charlie Coomer, appellees herein, who were the only children under age at the time. The farm was sold by order of court to Fred

Filbeck; and, after the period of redemption expired, the commissioner executed and delivered a deed to the purchaser who later sold the farm to his brother, Sam Filbeck, one of the appellants.

On December 6, 1938, this action was instituted by the heirs of B. S. Coomer, against Nora Coomer and appellants, seeking to set aside the deed executed by the commissioner in 1930, and seeking judgment for the present value of the land and Five Hundred ($500) rental for its use for the past five years. Numerous grounds, including fraud on the part of their mother, were alleged in support of the contention that judgment in the former action should be declared void.

After the suit was filed, but before summons was served, Fred Filbeck paid Twenty-Five Dollars ($25) to Nora Coomer, and the same amount to each of the heirs of B. S. Coomer, including appellees, in consideration of which they executed and delivered to him an absolute deed to the property. It appears from the record that he knew the suit had been filed, but failed to obtain consent to the transaction from Mike Oliver, attorney for the Coomers, who had a contract with the heirs for a fee equal to one half of any amount that might be recovered in the action. After Filbeck pleaded and filed the deed as a defense to the action, the attorney for appellees intervened in his own behalf and sought judgment against all the parties in the sum of Eight Hundred Fifteen Dollars and Seventy-Five Cents ($815.75), being one half the amount for which the property had just been sold to the Tennessee Valley Authority; and, in addition, a sum equal to one half the rental value of the property for the preceding five years. To avoid the consequences of their act in executing and delivering the deed to Filbeck, the plaintiffs pleaded fraud on the part of Filbeck in procuring their signatures to the instrument. As heretofore indicated, the property was sold by Filbeck to the Tennessee Valley Authority during the pendency of the action for One Thousand Six Hundred Thirty-One Dollars and Fifty Cents ($1631.50), which was paid into court by agreement of the parties. Upon a survey it was discovered that the farm contained some seven acres more land than was recited in any of the executed deeds, and by amendment recovery was sought for the value of the excess acreage.

The Trial Court sustained both pleas of fraud and adjudged appellees to be entitled to one sixth each of the fund in court plus Fifty Dollars ($50) each for the rental value of the property, subject to credit of Twenty-Five Dollars ($25) paid to each of them by Filbeck in consideration of their executing the deed to the property after the suit was filed. All the parties objected and excepted to the judgment, prayed and were granted an appeal to this Court. Only Fred and Sam Filbeck and their wives have perfected their appeals; Laura Coomer Holley and Charlie Coomer, who have not cross-appealed, are the only named appellees.

Brushing aside the question of whether the action was barred by failure of appellees to institute it within a year after becoming twenty-one years of age, and the question of the validity of the judgment in the foreclosure suit, we pass to the merits of appellees' joint plea of fraud with respect to the execution of the General Warranty deed by which they conveyed to Filbeck any interest they might have had in the property under their original plea of fraud. By the execution of this instrument, unless their contention that it should be set aside be upheld, they disposed of whatever interest they may have had in the property by reason of any fraud their mother might have committed by bringing about a sale of the property while they were infants, or by reason of any irregularities in the proceedings previous to their execution of the deed. Appellees seek to have the deed they executed to Mr. Filbeck set aside, upon an allegation of fraud in its procurement, based upon misrepresentations alleged to have been made to them by Filbeck that he had entered into an agreement with their attorney, and had settled with him for his fee. While the plea of fraud in each instance is the same, the testimony of each of the appellees so differs with the other, their contentions must be considered separately. Charlie Coomer testified that, after all the rest had signed, Fred Filbeck made the following statement to him in order to induce him to sign the deed: "You sign I will give you $25 and I will compromise with Mr. Oliver, I will see no danger between you and him." This testimony clearly brings Charlie's case outside the well settled rule that a misrepresentation to support an allegation of fraud must be made concerning a present or pre-existing fact, and not in respect to a promise to perform in

the future. Kentucky Electric Development Co. et al. v. Head, 252 Ky. 656, 68 S.W. 2d 1; Campbell County v. Braun, 295 Ky. 96, 174 S.W. 2d 1. It is manifest the Chancellor erred in rendering judgment for Charlie upon this, the only, misrepresenation claimed by him.

The testimony of Laura Coomer Holley differs from Charlie's, in that she stated Fred Filbeck told her he had already settled with her lawyer. This, if true, would be a misrepresentation of a present or pre-existing fact. She said Filbeck came to see her three times in an attempt to obtain her signature to the deed. That in the presence of Mrs. Rose Holley he offered her Eighty-One Dollars ($81) to sign, but she refused. That on another day when she and her husband only were present, he offered her Ninety-One Dollars ($91) to sign, and offered to give her husband a present of One Hundred Dollars ($100) if he would sign; they again refused. She further testified that on a later day Filbeck, together with her brother, W. E. Coomer, and Mark Belt, came to her home, and "Fred then asked me if I would sign the deed and I told him no, I did not want to sign it. I asked him how much I would get out of it, he said $25.00 and I asked him if Mr. Oliver would get one half of that and he said no—he had done settled with Mr. Oliver and that he would stand between us and all danger." Mrs. Holley did not testify as to the period of time that elapsed between the first meeting and the last, but Filbeck testified that she signed the deed about ten days after he first approached her. This is nowhere denied.

Mrs. Rose Holley, who was present on the first occasion, did not testify. Jessie Holley, the husband of Laura Holley, testified that he did not remember any dates or remember whether anything was said about the attorney representing them, but stated that he and his wife refused to sign for One Hundred Ninety-One Dollars ($191). The testimony of W. E. Coomer, Laura's brother, who was present when she signed, is extremely vague. He was not asked, nor did he attempt to say, exactly what Fred Filbeck told Laura, but testified that he had been told that their attorney had "quit the suit" and that Filbeck "* * * told them just like he told me, it was $25.00 or nothing," indicating that all the rest of the heirs had been told their attorney was not to be considered because he had abandoned the suit. Fred Filbeck testified emphatically that the attorney's name

was never mentioned to any of the heirs. Mark Belt, the Deputy County Clerk, who accompanied Filbeck to take acknowledgments, stated that they were at each place only a few minutes, and that Filbeck did not tell any of the parties that he had settled with Mike Oliver, their attorney.

Thus, we have this situation with respect to Laura Coomer Holley: An action charging her mother with fraud which she abandoned for Twenty-Five Dollars ($25); an action charging Fred Filbeck with fraud, wherein she has testified that she refused an offer of Eighty-One Dollars ($81) on one occasion, One Hundred Ninety-One Dollars ($191) on another, yet finally accepted the sum of Twenty-Five Dollars ($25). Of the three witnesses who could have confirmed her story, one has not testified, one did not remember, while the third, her brother, stated Filbeck represented to his sister that the attorney had abandoned the case, not that he had accepted a settlement. During the ten days the negotiations between her and Filbeck were in progress, Laura Holley did not consult her attorney to determine whether a satisfactory settlement had been made with him, alalthough she testified that she twice refused to rely on Filbeck's representation that such a settlement had been made, and finally signed the deed in reliance upon such representation, at the same time accepting (without explaining why) a reduction in the offered consideration approximating eighty-seven per centum. The parties were negotiating with each other for a period of ten days, during all of which time Mrs. Holley could have determined the truth or falsity of the statement she claims she relied on, by merely asking her attorney whether or not it was true. Proof of fraud must be clear and convincing to support an action to set aside a written instrument. McAllister v. Lambrose, 221 Ky. 44, 297 S.W. 936; T. M. Crutcher Laboratories v. Crutcher, 288 Ky. 709, 157 S. W. 2d 314. None of the witnesses Mrs. Holley introduced to clarify her proof testified to a single fact in substantiation of her contention; whilst Filbeck and a totally disinterested witness emphatically denied that any representation, true or false, was made in respect to any negotiation with Mr. Oliver. Viewing the evidence in its entirety, the uncorroborated testimony of Mrs. Holley lacks the convincing character necessary to support the judgment setting aside the deed.

Finally, it is argued that appellees at least should recover judgment for the value of the excess acreage the tract of land was found to contain after the deed to Filbeck was executed. No cross-appeal having been perfected, the question of appellees' right to recover for the value of the excess acreage is not before the Court.

The judgment is reversed, with directions that another be entered consistent with this opinion.