v.

**Lee DENTON and Henderson County, Kentucky, Appellees.**

Court of Appeals of Kentucky.

March 22, 1957.

**Edmond MAJOR et al., Appellants,**

v.

**CHRISTIAN COUNTY LIVESTOCK MARKET, Inc., et al., Appellees.**

Court of Appeals of Kentucky.

March 22, 1957.

King & Craig, Henderson, for appellant.

William L. Sullivan, L. Allen Rhoads, Henderson, for appellees.

Earle M. Nichols, Nichols & Nichols, Madisonville, for appellants.

John O. Hardin, Hopkinsville, for appellees.

SIMS, Judge.

This appeal is from a judgment of the Christian Circuit Court dismissing plaintiffs' petition to set aside a deed for an alleged fraud practiced on grantors by Oscar Maddux in obtaining a conveyance of 5.46 acres of land from them; also to set aside a deed by which Maddux conveyed this same land to the Christian County Livestock Market, Inc., which will be hereinafter referred to as the Company.

It is the contention of plaintiffs that Maddux fraudulently induced them to convey to him the lot by falsely representing to them that he was buying it for the purpose of erecting a home thereon, when in fact he was purchasing it not for himself but for a group of men who wanted it for a livestock market, and who furnished Maddux with money with which to buy the property.

Maddux insists that he bought the lot with his own money with the intention of building a home on it but later changed his mind and decided to join some associates in entering a livestock marketing venture, and sold the lot to the Company. He argues that another livestock marketing company in Hopkinsville is backing the Majors in this litigation so such company will not have a business competitor.

When the company started erecting its plant on this lot the Majors instituted an injunction suit against it, but the trial judge refused an injunction on the ground that a livestock market is not a nuisance per se. Thereafter this suit was instituted by the Majors to cancel the two deeds above mentioned.

The parties do not disagree greatly as to the law governing the case, to which we will later refer. However, there is a sharp issue of fact between them and it is necessary that we review the evidence in some detail.

Mr. and Mrs. Major reside on their farm of some 150 acres located just outside the city limits of Hopkinsville. The land faces on Highway 68 and extends back to the tracks of the Illinois Central Railroad. Mr. Maddux, who usually goes by the name of Sam, was a hardware merchant in Hopkinsville. In May 1950, Sam bought the land

in question from the Majors for $600 an acre, telling them he wanted to build a home on it and to move his family to the country, adding that he might in time erect a warehouse for machine parts on the property and he would build a stable thereon for a cow and a couple of saddle horses. According to the Majors, Sam also promised them he would not put anything on the land "they did not want." The lot Sam bought was from one-fourth to one-half a mile from the Majors' residence, extended from Highway 68 to the railroad tracks and was out of a parcel of 13 acres the Majors had purchased a year or so previously for $300 an acre.

The lot was surveyed off the Major farm by Frank Campbell, who, though not a lawyer, also wrote the deed to Sam and wife which was executed the day it was written, May 19, 1950. Mr. Major wanted certain restrictions put in the deed and Sam told him to write in any he desired and if they did not suit him (Sam), he would not buy the property. There were five restrictions put in the deed preventing the land from being used: ·1. In the liquor business; 2. in the amusement business; 3. for tourist cabins; 4. for sale or lease to any person of African descent; 5. in interference with natural drainage.

When the Majors executed the deed in the county court clerk's office it was handed to Sam, who went off with it "to look it over a little more," and it was agreed he would meet them in the bank and pay the rest of the purchase price of $2,778.34, he having previously given them check for $500 to bind the deal. Sam was gone for an hour or more, returned to the bank and paid the whole purchase price in cash and was given back his check. He testified the Majors demanded payment in cash, while they denied this and said Sam insisted on paying the entire purchase price in cash. Sam testified he got part of the cash out of his store and borrowed the rest from his brother. He asked the Majors not to mention the deal as it might hurt his chances in selling his home in Hopkinsville. The Majors intimate that when Sam left with the deed he took it to show to the men they contend he represented in buying the property, but there is no proof in the record to substantiate this contention.

On June 13, 1950, Sam and wife conveyed the lot in question to the Company for the same consideration he paid the Majors. The Company agreed to reconvey him an acre of the lot, which it subsequently did, and this was equivalent to his making $600 on the deal. The Company's corporation papers were drawn on June 10, and recorded in the county court clerk's office on June 20. Sam was one of the incorporators and subscribed to one-fourth of the stock, was the Company's first President and is now its Secretary.

A well was drilled on the lot and there is a conflict in the testimony as to whether it was started on or about May 22, as testified by the Majors and several of their witnesses, or whether it was started after the Company acquired the lot. Mr. Major is certain the drilling machine was moved on the lot on or before May 22, because he had just returned home from delivering a load of hogs in Evansville that day and saw the machine on the property. Several friends of Major remembered seeing the machine on the lot when he returned from Evansville, as well as during the hay harvest the latter part of May. Major asked Sam why he was drilling a well so far from where he was going to build and Sam replied, "I can pipe the water anywhere." Sam did not remember being asked about the well by Major. Then too, Major testified Clarence Newton in May mentioned that Major could cut the hay on this lot if he desired.

It was testified by Sam, Newton and Norman Phillips (three of the incorporators of the Company) that the first thing done after the Company incorporated was to start drilling this well, therefore the well must have been started after June 10 (the date the incorporation papers were signed) and about June 13 (the date Sam conveyed the lot to the Company).

Louis Orten, the driller, testified he started the well on June 16 and the Company paid him for his work on June 30. However, Orten admits he could not give the exact date when he began this well and arrived at the date through other wells he had drilled in June. Several witnesses for whom Orten had drilled wells in June corroborated him in a general way as to the date he started drilling on the Company's lot.

Arvin McCain testified that Newton and Phillips asked him if he knew of any land suitable for use as a stockyard, and as he had heard that Sam had purchased this lot, he went to see Sam and bought the lot from him. Sam, McCain, Phillips and Newton all testified Sam did not purchase the lot for them and they did not mention to him anything about a stockyard until after Sam had bought the property.

William Hawkins testifying for plaintiffs, said McCain was in his place of business near the Majors' home "waiting for a friend to go see Major," and when Sam returned McCain and he drove off together. This was right before Sam bought the lot. Sam explains this by saying McCain was waiting to go with him to see a second hand combine which McCain was interested in buying. Lis Burke, another witness for plaintiffs, testified that before the well was drilled Newton told him he, McCain and Sam had bought the Major property. However, Newton testified his conversation with Burke was after Sam had sold the lot to the Company.

■ As stated at the outset of this opinion, there is no serious conflict between the parties as to the law governing the case. One may commit "fraud in the inducement" by making representations as to his future intentions when in fact he knew at the time the representations were made he had no intention of carrying them out, Evola Realty Co. v. Westerfield, Ky., 251 S.W.2d 298. And fraudulent statements made to induce one to execute a deed or contract do not merge into the instrument,

City of Elizabethtown v. Caswell, Ky., 261 S.W.2d 424. Also see 23 Am.Jur. "Fraud and Deceit" § 106, p. 885.

■ In Adams v. Gillig, 199 N.Y. 314, 92 N.E. 670, 32 L.R.A.,N.S., 127, there were no restrictions in the deed but the proof showed plaintiff would not have conveyed the property except for the false representations of defendant that he intended to erect dwellings on the lot when it was his intention at the time he made the representations to build a public garage on the property. The case at bar differs from the New York case, as here there is no clear and convincing evidence that Maddux at the time he purchased the property intended to build a livestock market rather than a home; while Gillig had his architect working on plans for the garage the day following the purchase of the lot. · To cancel a writing fraud must be proved by clear and convincing evidence. Lossie v. Central Trust Co., 219 Ky. 1, 292 S.W. 338; Fields v. Cornett, 254 Ky. 35, 70 S.W.2d 954. This plaintiffs did not do.

■■ The evidence in the instant case is in direct conflict as to whether Sam represented to the Majors he was buying this lot for a home site, knowing at the time he would use it for a livestock market, or whether he purchased the property in good faith for a home site and later changed his mind. The trial judge in his well considered opinion held that the evidence did not show Sam was guilty of false representations when he bought the property from the Majors, and we are of the opinion that the evidence supports his finding. Certainly, the trial judge's finding of fact cannot be said to be clearly erroneous, and in order for us to reverse his judgment we would be compelled to find that it was. CR 52.01.

Major had the five restrictions above mentioned inserted in the deed. Had he been as insistent when he executed the deed to Sam as he is now that the property should not be used for a livestock market, he could have obviated all controversy by

putting such a restriction in the deed. The weakest part of Major's case is he inserted the restrictions he thought important, but did not put in the deed a restriction against using this property for a livestock market.

The judgment is affirmed.