BEAR, INC., d/b/a Laker Express, Appellant,

v.

Tony H. SMITH; Smith Services, Inc.; and Smith Heating and Air Conditioning, LLC, Appellees.

No. 2008–CA–001556–MR.

Court of Appeals of Kentucky.

Jan. 22, 2010.

R. Aaron Hostettler, London, KY, for appellant.

David Howard, London, KY, for appellee.

Before KELLER, MOORE, and TAYLOR, Judges.

## OPINION

MOORE, Judge.

Bear, Inc., d/b/a Laker Express, appeals from a judgment of the Laurel Circuit Court dismissing its action to collect unpaid fuel charges from Tony H. Smith and an unrelated entity, Smith Heating and Air Conditioning, LLC; its claims against Tony H. Smith for fraud relating to these charges; and its action to pierce the corporate veil of Smith Services, Inc., as an alternate basis of liability for its sole shareholder, Tony H. Smith. For the reasons herein stated, we affirm the circuit court regarding Laker Express's claims of fraud and the liability of Smith Heating and Air Conditioning, LLC. We reverse the circuit court as to the issues of Tony H. Smith's individual liability for these charges.

## FACTS AND PROCEDURAL HISTORY

Smith Services, Inc., is a Kentucky corporation whose sole shareholder is Tony H. Smith. Bear, Inc., doing business as Laker Express, is also a Kentucky corporation and operates a fueling station in London, Kentucky. Smith Services charged fuel to an account at Laker Express between 1999 and February 1, 2002. Before Laker Express closed this account, Smith Services owed it approximately $35,000. Neither Smith Services nor Laker Express memorialized in writing their understanding regarding this account or their understanding of what should occur in the event of default. Furthermore, Tony H. Smith did not personally guarantee this debt, and Laker Express did not require security of any kind. Instead, after Smith Services charged fuel, Smith Services' agents would complete a credit card slip listing the date and the cost of the fuel charged, and an employee of Laker Express would write down the name of Smith Services' agent charging the fuel, usually giving the slip a purchase order number. All bills for this account were directed to "Smith Services, Inc."

In February of 2002, Smith Services discontinued payment on this account, and Laker Express no longer allowed Smith Services to charge fuel. From that point forward, Laker Express required Smith Services to pay all fuel charges it incurred on a monthly basis. It is undisputed that all subsequent monthly charges for fuel were timely and fully paid. However, while Laker Express gave Smith Services a credit against its preexisting fuel debt for some nominal HVAC work Smith Services performed at Laker Express's store, Smith Services paid nothing further on the balance of that debt.

Tony H. Smith testified that he shut down and dissolved Smith Services sometime in 2003 because it had not been paid on several contracts and because its creditors had attached and liquidated its assets. Smith Services' tax return for 2003 was the last tax return it filed. However, Tony H. Smith did not file articles of dissolution, nor did he inform Laker Express that he had dissolved Smith Services, Inc. There-

after, Tony H. Smith testified that he continued to do some business as a sole proprietor. He also continued to purchase fuel from Laker Express until 2005.

In March of 2006, Laker Express filed suit against Smith Services in an attempt to collect upon the unpaid balance of the fuel account. At that time, however, Smith Services had no assets and, several months later, the Kentucky Secretary of State administratively dissolved Smith Services. Thereafter, Laker Express amended its complaint on three occasions, attempting to place direct liability for this debt with Tony H. Smith and with an unrelated limited liability entity, organized by Tony H. Smith's son, named "Smith Heating and Air Conditioning, LLC." Laker Express also added claims of fraud in the inducement, fraud by omission, and sought to pierce the corporate veil of Smith Services as an alternate means of assessing liability against Tony H. Smith, its sole shareholder.

On October 8, 2007, Tony H. Smith and Smith Heating and Air Conditioning, LLC, moved to dismiss Laker Express's claims against them for direct liability on Smith Services' fuel account, punitive damages, and attorney's fees. Additionally, Tony H. Smith moved to dismiss Laker Express's claims for fraud against him, individually, as well as its action to pierce the corporate veil of Smith Services. The circuit court treated the motion as a motion for summary judgment and, after reviewing the evidence of record, dismissed Laker Express's claims against these respective parties on June 24, 2008. On July 3, 2008, Laker Express moved to alter, amend, or vacate the circuit court's order, and the circuit court denied its motion on August 8, 2008. Laker Express's claims against Smith Services were assigned for trial, but Laker Express continued them and they are, to date, still pending. This appeal followed. Additional facts relating to this case will be developed further as they become relevant to our analysis below.

On appeal, Laker Express repeats the arguments it made before the circuit court regarding fraud, Tony H. Smith's personal and shareholder liability for Smith Services' fuel charges, and the liability of Smith Heating and Air Conditioning, LLC, for this debt; *i.e.*, that evidence of record created a genuine issue of material fact as to each of these issues, making summary judgment inappropriate.

## STANDARD OF LAW

■ The motions and responses of the respective parties regarding the dismissal of Laker Express's claims of fraud, its action to collect upon the fuel charges and to pierce the corporate veil of Smith Services, Inc., referred to matters outside the pleadings. As such, the motions will be treated as motions for summary judgment. *See Cabinet for Human Resources v. Women's Health Services, Inc.*, 878 S.W.2d 806, 807 (Ky.App.1994); *see also, Pearce, M.D. v. Courier-Journal*, 683 S.W.2d 633, 635 (Ky.App.1985).

As Tony H. Smith's and Smith Heating and Air Conditioning, LLC's motion to dismiss is converted into a motion for summary judgment, the issue is not whether the complaint states a claim but whether the record discloses a genuine issue of fact. *See* Civil Rule (CR) 56.03. As such, when considering a motion for summary judgment, the court is to view the record in the light most favorable to the party opposing the motion, and all doubts are to be resolved in that party's favor. *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 480 (Ky.1991). The trial court must examine the evidence, not to decide any issue of fact, but to discover if a real issue of material fact exists. *Id.* The moving party bears the initial burden of showing

that no issue of material fact exists, and then the burden shifts to the party opposing summary judgment to present at least some affirmative evidence showing that there is a genuine issue of material fact for trial. *See Lewis v. B & R Corporation,* 56 S.W.3d 432, 436 (Ky.App.2001).

## ANALYSIS

### I. FRAUD

■ Laker Express first argues that summary judgment was inappropriate because its intentional tort claims of fraud in the inducement and fraud by omission against Tony H. Smith are supported by evidence in the record, which demonstrates the existence of genuine issues of material fact. We note from the onset that Laker Express has not asserted any claim of fraud against Smith Services; rather, its fraud claims are alleged solely against Smith Services' shareholder, Tony H. Smith, individually.[1] Assuming that the corporate form cannot shield Tony H. Smith from these claims, we nevertheless disagree.

■ In Kentucky, a party claiming harm resulting from fraud in the inducement must establish six elements of fraud by clear and convincing evidence as follows: a) material representation b) which is false c) known to be false or made recklessly d) made with inducement to be acted upon e) acted in reliance thereon and f) causing injury. *United Parcel Service Co. v. Rickert,* 996 S.W.2d 464, 468 (Ky. 1999). In addition, "a misrepresentation to support an allegation of fraud must be made concerning a present or pre-existing

fact, and not in respect to a promise to perform in the future." *Filbeck v. Coomer,* 298 Ky. 167, 182 S.W.2d 641, 643 (1944). *See also, Kentucky Electric Development Co.'s Receiver v. Head,* 252 Ky. 656, 68 S.W.2d 1, 3 (1934) ("An accepted rule is, a misrepresentation, to be actional, must concern an existing or a past fact, and not a future promise, prophecy, or opinion of a future event, unless declarant falsely represents his opinion of a future happening."); *see also Major v. Christian County Livestock Market,* 300 S.W.2d 246, 249 (Ky.1957) ("One may commit 'fraud in the inducement' by making representations as to his future intentions when in fact he knew at the time the representations were made he had no intention of carrying them out[.]")

■ Here, all of the representations at issue regard Smith Services' fuel account with Laker Express and refer to the future act of Smith Services paying Laker Express when Smith Services was, in turn, paid for work it had performed on a number of projects for other businesses. The evidence in the record demonstrates that 1) this account was established in September of 1999; 2) the last time Smith Services substantially paid on this account was October 12, 2001; 3) the last time Smith Services charged fuel to this account was in January of 2002; and 4) Tony H. Smith made the first of his alleged representations in February of 2002. Based upon these facts, Laker Express's claim for fraud in the inducement fails for two reasons.

---

1. On appeal, Laker Express alleges that Smith Heating and Air Conditioning, LLC, is also liable for fraud. Below, Laker Express attempted to allege fraud against Smith Heating and Air Conditioning, LLC, in a tendered fourth amended complaint. The trial court denied it leave to file its fourth amended complaint and, on October 3, 2007, Laker Express voluntarily filed a "notice of withdrawal of motion to file fourth amended complaint." Consequently, this Court will not consider this claim of fraud, as Laker Express did not assert it at the trial level.

First, no evidence in the record demonstrates that Tony H. Smith's alleged representations were made to induce Laker Express to act or refrain from acting. While all of these representations refer to Smith Services promising to pay Laker Express at some point in the future, the representations at issue began roughly one month after Smith Services' last fuel charge on its account. Thereafter, Smith Services timely paid all of its fuel charges on a weekly basis and thus cannot be said to have induced Laker Express to supply Smith Services with fuel. In addition, while Laker Express contends that these promises to pay induced it to delay initiating civil proceedings against Smith Services sooner, it fails to produce any evidence that the promises to pay were contingent upon Laker Express foregoing or delaying legal action on the debt that had already accumulated. Additionally, Laker Express makes no showing as to how these promises were meant to induce it to refrain from inquiring into the financial straits of Smith Services, having Tony H. Smith sign a personal guaranty, or demanding a security interest or other adequate assurances.

Second, Laker Express produced no evidence that Tony H. Smith, or any agent of Smith Services, knew at the time that Smith Services incurred the various unpaid fuel charges on its account that Smith Services would not, in fact, pay Laker Express. *See Major*, 300 S.W.2d at 249. Moreover, the only evidence of record regarding Tony H. Smith's intent to pay the fuel charges, which derives from his representations made after incurring the charges, demonstrates that Smith Services intended to pay its debt and expected to pay it when it was paid on projects that it was working on at that time. Regarding his initial representation of February 2002, Tony H. Smith stated:

Smith: It was after a project that was in Estill County. And that's—we were buying fuel on a daily basis, and probably running six, seven hundred dollars a day. And a couple of months went by, and I approached Jeff [Ison][2] myself.

Q: And what did you say to him?

Smith: Well, at this time, that was the first time that I had remembered ever talking to him. And I apologized to him for the situation, and told him the situation, and explained to him how that, you know, the procedures of possibly getting his money. And then at that point in time, I told him that I couldn't pay him what we—what that [sic] Smith Services owed him at that time.

Q: How much was that, at that time?

Smith: It was twenty thousand-plus dollars. I don't know exactly. But it was a considerable amount. It was about a six weeks [sic] period there that we were hauling sand. I had three trucks running, and they were running six, seven hundred dollars a day.

Q: Okay.

Smith: And at that time, I told him from that time on, that we would pay him on a month-to-month basis for what—but that the fuel that we purchased and had already purchased, you know, I mean I couldn't—Smith Services couldn't pay him till they got paid on the debt. And Smith Services never received the money, and in turn, this is where it ended up.

Thus, because Laker Express has failed to show that Tony H. Smith and Smith Services never intended to pay the respective fuel charges at the time that they were incurred, Laker Express cannot establish that its claim meets the exception to the fraud rule involving misrepresenta-

---

2. Jeff Ison is the President of Laker Express.

tions as to future intentions. Consequently, its fraud in the inducement claim fails.

■ As to the portion of Laker Express's claim alleging fraud by omission, we also conclude that the trial court did not err in granting summary judgment. Regarding this cause of action, we stated in *Rivermont Inn, Inc. v. Bass Hotels Resorts, Inc.*, 113 S.W.3d 636, 641 (Ky. App.2003), that

> [f]raud by omission is not the same, at law, as fraud by misrepresentation, and has substantially different elements. To prevail on a claim of fraud by omission, or fraud based on failure to disclose a material fact, a plaintiff must prove: a) that the defendants had a duty to disclose that fact; b) that defendants failed to disclose that fact; c) that the defendants' failure to disclose the material fact induced the plaintiff to act; and (d) that the plaintiff suffered actual damages. A duty to disclose facts is created only where a confidential or fiduciary relationship between the parties exists, or when a statute imposes such a duty, or when a defendant has partially disclosed material facts to the plaintiff but created the impression of full disclosure.

(Internal citations omitted).

■ As stated above, a duty of disclosure may arise from a fiduciary relationship, partial disclosure of material facts, or by statute. Here, Laker Express does not contend that a fiduciary relationship existed between itself and Smith Services, and the trial court did not find that the relationship between Laker Express and Smith Services was more than that of a

creditor and a debtor. Moreover, while Laker Express argues at length that Smith Services' continuous, weekly payments subsequent to February of 2002 gave it the impression that Smith Services had assets, Laker Express has produced no evidence demonstrating that Tony H. Smith or any agent of Smith Services made an affirmative representation to that effect, or partially disclosed material facts creating such an impression.[3]

However, while we also disagree that Smith Services or Tony H. Smith owed Laker Express a statutory duty to disclose the fact of its dissolution, this issue warrants further discussion. Laker Express argues that such a duty is created under Kentucky Revised Statute (KRS) 271B.14–060. In relevant part, KRS 271B.14–060, entitled "Known claims against dissolved corporation[,]" provides:

(1) A dissolved corporation may dispose of the known claims against it by following the procedure described in this section.

(2) The dissolved corporation shall notify its known claimants in writing of the dissolution at any time after its effective date. The written notice shall:

(a) Describe information that must be included in a claim;

(b) Provide a mailing address where a claim may be sent;

(c) State the deadline, which may not be fewer than one hundred twenty (120) days from the effective date of the written notice, by which the dissolved corporation must receive the claim; and

---

**3.** Of particular relevance, Laker Express's President, Jeff Ison, made the following exchange in his deposition:

> Q: Has Smith Services, or Tony H. Smith, ever done anything to mislead you with regard to this account?
>
> . . .
>
> Ison: Mislead me? He told me he would try to pay me, you know. You know, as to this point in time, I've never been paid.
>
> Q: Okay. Other than telling you he'd pay you, and he didn't pay you, anything else?
>
> Ison: Not that I can think of.

(d) State that the claim will be barred if not received by the deadline.

(3) A claim against the dissolved corporation shall be barred:

(a) If a claimant who was given written notice under subsection (2) of this section does not deliver the claim to the dissolved corporation by the deadline;

(b) If a claimant whose claim was rejected by the dissolved corporation does not commence a proceeding to enforce the claim within ninety (90) days from the effective date of the rejection notice.

(4) For purposes of this section, "claim" shall not include a contingent liability, a claim based on an event occurring after the effective date of dissolution or any liability to the Commonwealth or the United States for any state or federal tax liability.

■ In sum, this is an example of a corporate survival statute; *i.e.*, it allows the corporation to take certain acts, or allows certain acts to be taken against the corporation, following corporate dissolution. Generally, for the purpose of being sued, a corporation is deemed to exist until its debts are paid. *See Economy Bldg. & Loan Ass'n v. Paris Ice Mfg. Co.*, 113 Ky. 246, 68 S.W. 21, 24 Ky. L. Rptr.107 (1902); *Stearns Coal & Lumber Co. v. Douglas,* 299 Ky. 314, 185 S.W.2d 385 (1944). The General Assembly enacted KRS 271B.14–060 in 1988 following the 1984 Model Business Corporation Act, and it is identical to section 14.06 of the Model Act. According to the Model Act's official comment for

that section, its purpose is to "provide a simplified system for handling known and unknown claims against a dissolved corporation, including claims based on events that occur after the dissolution of the corporation." The plain language of KRS 271B.14–060 demonstrates the benefit of this simplified system: if a dissolving corporation gives notice to its known creditors pursuant to KRS 271B.14–060, then the claim of any creditor so noticed may be extinguished in as few as one hundred twenty days following that notice, provided that the notice states such a deadline and the creditor fails to timely deliver its claim to the dissolving corporation. Alternatively, if the creditor does timely deliver its claim to the corporation, but its claim is rejected, then its claim will be extinguished if it fails to commence a proceeding to enforce its claim within ninety days of the rejection notice.

■ To date, no Kentucky court has addressed whether this statute requires a corporation to inform its creditors of its dissolution, or whether this statute is simply provided as an option for a dissolved corporation to dispose of claims against it. However, we conclude that the language of KRS 271B.14–060(1) is dispositive, as it states that "[a] dissolved corporation *may* dispose of the known claims against it by following the procedure described in this section." (Emphasis added.) Here, the "may" renders this statute permissive, rather than mandatory. As such, this section does not prescribe the exclusive means of making adequate provision for debts and liabilities.[4] Moreover, a thor-

---

**4.** This Court recognizes that similar statutes in other jurisdictions contain language making notice to creditors mandatory, rather than permissive, in some corporate dissolution proceedings. Examples of these jurisdictions include Alaska (*see* Alaska Stat. §§ 10.06.615 and 653); Louisiana (*see* LSA–R.S. 12:142(B)(1)); Montana (*see* MCA 35–2–726); Maryland (*see* MD Code, CORP & ASSNS, § 3–404); Pennsylvania (*see* 15 Pa.C.S.A. § 1975); Rhode Island (*see* RI ST § 7–1.2–1303(4)); and Texas (V.A.T.S.Bus.Corp.Act, Art. 6.04(A)(2)). As noted above, however, no

ough review of the other statutes contained in this chapter regarding dissolution reveals no further support for the affirmative duty of disclosure Laker Express proposes. In the absence of a more specific expression of legislative policy to the contrary, we do not construe a legislative purpose to create an affirmative duty of a Kentucky corporation to notify its creditors of dissolution. Consequently, Smith Services or Tony H. Smith had no duty to disclose the fact of dissolution to Laker Express. As this element fails, so too must Laker Express's claim of fraud by omission.

## II. DIRECT LIABILITY FOR COLLECTION OF ACCOUNT

Next, Laker Express contends that evidence of record demonstrates Tony H. Smith and Smith Heating and Air Conditioning, LLC, are directly liable for Smith Services' fuel charges and, consequently, summary judgment on this point was inappropriate.

■ With respect to Smith Heating and Air Conditioning, LLC, we disagree. Laker Express makes no contention, nor does any evidence of record demonstrate that the LLC is a successor entity of Smith Services; that it is a shareholder of Smith Services; that it had agreed or represented to assume the debts of Smith Services; or that a novation occurred. Rather, Laker Express argues that the LLC became liable for Smith Services' fuel account because the LLC's agents and employees purchased fuel from Laker Express between 2003 through 2005 and because it believed that the LLC's agents were actually the agents of Smith Services. This argument is curious, at best: regardless of their principal, none of these agents

used Smith Services' account to purchase fuel, and Laker Express makes no contention that it is owed for any fuel charges subsequent to February of 2002. As such, this argument has no merit.

With respect to Tony H. Smith, individually, we reach a different conclusion. Regarding a shareholder's liability for a corporate debt, the Supreme Court of Kentucky held that

[W]here a corporation is dissolved or is consolidated its assets become a trust fund for the payment of its debts and may be reached by proceeding against the stockholders of the old company in a court of equity.... [S]ince all that a corporation has for the payment of its debts is its property, the law, for the protection of creditors, has impressed the property with a trust character for the payment of the debts and said that the corporation holds it for the benefit of its creditors, and when it parts with this property, getting in return nothing the creditor can subject, the law will follow the property into the hands of the taker and make it liable to the extent of the value of the property received.

*Reeves v. East Cairo Ferry Co.,* 289 Ky. 384, 158 S.W.2d 937, 938 (1942) (internal citations omitted).

■ Thus, the general rule holds that that if a shareholder receives property from a dissolved corporation, that shareholder is liable to any unpaid creditors of the dissolved corporation to the extent of the property received. This general rule has been qualified by KRS 271B.14–060 (dealing with "known claims" against the corporation), stated above, and KRS 271B.14–070 (dealing with "unknown" or subsequently arising claims against the corporation), to the extent that if a creditor receives notice of the corporation's dis-

such mandatory language appears in the Kentucky Revised Statutes.

solution and does not timely act to enforce any claims it may have, then its claims are extinguished. However, KRS 271B.14–070(4) continues to recognize the rule stated in *Reeves:*

A claim may be enforced under this section:

(a) Against the dissolved corporation, to the extent of its undistributed assets; or

(b) If the assets have been distributed in liquidation, against a shareholder of the dissolved corporation to the extent of his pro rata share of the claim or the corporate assets distributed to him in liquidation, whichever is less, but a shareholder's total liability for all claims under this section shall not exceed the total amount of assets distributed to him.

 Here, Laker Express produced evidence in the form of Smith Services' 2003 tax return, which was the last return Smith Services filed. It includes that, as of 2003, Tony H. Smith had received "shareholder loans" (*i.e.,* assets) from Smith Services in the amount of $173,434. Tony H. Smith produced no promissory notes or agreements memorializing these loans. Tony H. Smith does not contend that he has repaid these loans, and no evidence of record demonstrates that Tony H. Smith has done so or intends to do so. Additionally, neither KRS 271B.14–060 or KRS 271B.14–070 would qualify Tony H. Smith's personal liability, to the extent of any assets received by him, because 1) if Smith Services was constructively dissolved in 2003, as Tony H. Smith intended, its failure to give notice of its dissolution to its creditors prevented the triggering of the claims limitations periods contained in those respective statutes; and 2) if Smith Services' effective date of dissolution is to be traced to the Secretary of State's administrative action in 2006, Laker Express's claim against Tony H. Smith individually would have been timely even if those statutes did apply, as its complaint was filed before Smith Services was administratively dissolved. As such, it was error for the circuit court to dismiss Tony H. Smith as a party defendant. Kentucky law allows a creditor who timely files its claim to proceed directly against a shareholder of a dissolved corporation to the extent of the corporate assets received by that shareholder, and Laker Express has produced some evidence creating a genuine issue of material fact as to whether Tony H. Smith had received assets of Smith Services for which he could now be personally liable.

### III. PIERCING THE CORPORATE VEIL

Laker Express next contends that some evidence exists in the record demonstrating that, as a matter of equity, Smith Services' corporate form should be disregarded and Tony H. Smith should be held directly liable for its fuel charges. Stated differently, Laker Express wishes to "pierce the corporate veil." We agree.

 In general, a corporation is treated as a legal entity separate and apart from its shareholders. However, when the corporation is used to justify wrong, protect fraud or defend crime, the law regards the corporation as an association of persons. *Dare To Be Great, Inc. v. Commonwealth, ex rel. Hancock,* 511 S.W.2d 224, 227 (Ky.1974). Two related theories have been used to hold the shareholders of a corporation responsible for corporate liabilities: the "alter ego" theory and the "instrumentality" theory. *White v. Winchester Land Development Corp.,* 584 S.W.2d 56, 61 (Ky.App.1979). Under the alter ego theory, a plaintiff must prove: (1) that the corporation is not only influenced by the owners, but also that there is such unity of ownership and inter-

est that their separateness has ceased; and (2) that the facts are such that treatment of the corporation as a separate entity would sanction a fraud or promote injustice. *Id.* at 61–62. Similarly, under the instrumentality theory, the plaintiff must establish three elements to warrant a piercing of the corporate veil: (1) that the corporation was a mere instrumentality of the shareholder; (2) that the shareholder exercised control over the corporation in such a way as to defraud or to harm the plaintiff; and (3) that a refusal to disregard the corporate entity would subject the plaintiff to unjust loss. *Id.* at 61.

 Thus, a party advocating that that corporate form be disregarded has the burden of establishing both an abuse of the form and a wrong. These elements must be assessed in light of the totality of circumstances, but generally the first element focuses on the relationship between the corporation and the owners or other corporate actors, while the second element concerns the relationship between the corporation and the plaintiff. Courts have identified several factors bearing on this first relationship such as (1) whether the corporation is inadequately capitalized, (2) whether the owners observe corporate formalities, (3) whether the corporation issues stock or pays dividends, (4) whether it operates without a profit, (5) whether there is a commingling of corporate and personal assets, (6) whether the owners use corporate assets as their own, or in general deal with the corporation at arms length, (7) whether there are non-functioning officers or directors, (8) whether the corporation is insolvent at the time of the transaction, (9) whether corporate records have been maintained, and (10) whether others pay or guarantee debts of the corporation. *Id.* at 62. No single factor is dispositive.

 Here, there is some evidence in the record regarding the relationship between Smith Services and Tony H. Smith demonstrating the first element (*i.e.,* an abuse of the corporate form). Tony H. Smith was the sole shareholder of Smith Services. In his answer to Laker Express's third amended complaint, he admitted "that he kept no shareholders [sic] meetings or minutes of share holders [sic] meetings, and admits that no dividends were paid to shareholders, and that there were no distributions paid to shareholders, and also that he received no salary." While he denied that Smith Services kept no annual reports, he "states that the annual reports that it did maintain, have now been lost." Tony H. Smith has no specific memory of signing any promissory notes regarding the monies Smith Services loaned him, nor does he remember the specifics of what the terms may have been or the whereabouts of the notes. Tony H. Smith admits he personally guaranteed a debt to Union National Bank of approximately $500,000. Moreover, Tony H. Smith failed to file annual reports for Smith Services, which ultimately led to its administrative dissolution.

Additionally, while we have determined that no fraud has occurred under the circumstances of this case, and while the record fails to demonstrate that the corporate form of Smith Services was used to defend a crime, Laker Express has presented some evidence, concerning the relationship between Smith Services and Laker Express, demonstrating the second element (*i.e.,* the justification of a wrong. *See Hancock, supra*). Smith Services' 2001 tax return includes that it loaned $40,000 to its sole shareholder, Tony H. Smith, at the end of that tax year. With the exception of providing nominal HVAC services credited against this account, Smith Services stopped paying Laker Express for its existing fuel charges in Feb-

ruary of 2002. However, upon the filing of its final 2003 tax return, and subsequent to the date Tony H. Smith intended to dissolve Smith Services, the amount of outstanding shareholder loans to Tony H. Smith had increased to exactly $173,494. This is some evidence that Tony H. Smith paid himself at will through corporate funds. While some of these funds, as Tony H. Smith contended in his deposition, may well have been reimbursement for services rendered to the corporation, rather than loans, nothing in the record documents these services. These unaccounted-for disbursements to Tony H. Smith arguably left Smith Services incapable of repaying Laker Express for its fuel charges and unjustly limited Smith Services' ability to respond to Laker Express's claim for damages. Although these circumstances fall short of fraud, they provide some evidence demonstrating a genuine issue of material fact as to whether Tony H. Smith abused the corporate form by disregarding it and by using it to undermine Laker Express's ability to seek legal recourse. The trial court erred, therefore, by rendering summary judgment on this issue in favor of Tony H. Smith.

## CONCLUSION

For the reasons herein stated, we AFFIRM the Laurel Circuit Court's opinion as it relates to the issues of fraud and to the dismissal of Smith Heating and Air Conditioning, LLC, as a party-defendant. We REVERSE the Laurel Circuit Court's opinion as it relates to piercing the corporate veil of Smith Services and dismissing Tony H. Smith as a party-defendant, as genuine issues of material fact remain regarding these issues, and REMAND for further findings not inconsistent with this Opinion.

ALL CONCUR.