**Dr. Jack READNOUR, Appellant**

v.

**Jerry GIBSON, Jr.; Jerry Gibson III; Tammy Gibson; Thomas G. Abbott; and Dylan Mead, Appellees.**

No. 2014–CA–000023–MR.

Court of Appeals of Kentucky.

Sept. 19, 2014.

Rehearing Denied Nov. 7, 2014.

618

Dr. Jack Readnour, pro se, Ft. Mitchell, KY, for Appellant.

R. Stephen Burke, Crestview Hills, KY, for Appellees.

Before CAPERTON, COMBS, and VANMETER, Judges.

*OPINION*

COMBS, Judge:

Jack Readnour, *pro se,* appeals from an order of the Kenton Circuit Court granting summary judgment and dismissing the claims he asserted against Jerry Gibson, III; Tammy Gibson, his wife; Jerry Gibson, Jr., his father; Thomas G. Abbott; and Dylan Mead. After our review, we affirm.

On June 8, 2012, following an incident that can best be described as an example of "road rage," the Gibsons filed an action against Readnour in Kenton Circuit Court for personal injuries and property damage. Readnour filed a timely answer denying liability.

On July 20, 2012, Readnour filed his own complaint for personal injury and property damage in Kenton Circuit Court against the Gibsons and against appellees Abbott and Mead. Proceeding without the assistance of an attorney, Readnour asserted claims based upon alleged violations of Kentucky Revised Statutes (KRS) 508.030 (assault); KRS 508.040 (assault under extreme emotional disturbance); KRS 508.050 (menacing); KRS 508.070 (wanton endangerment); KRS 508.100 (criminal abuse); KRS 508.140 (stalking); KRS 509.020 (unlawful imprisonment); KRS 509.040 (kidnapping); KRS 189.290 (failure to drive carefully); and KRS 304.47–020 (insurance fraud). He also asserted a separate claim for "loss of personal liberty" and a claim for loss of consortium. Readnour sought to recover both compensatory and punitive damages. In his complaint, Readnour described the following events.

On June 12, 2011, at approximately 12:55 p.m., Readnour, who was driving his wife's mini-van, encountered a line of vehicles stalled in traffic on Orphanage Road in Kenton County. To avoid the traffic delay, Readnour decided to switch to the driving lane to his immediate left. Since it was blocked by orange cones several yards ahead, this lane of travel was apparently free of traffic. Readnour alleged that he intended to bypass the line of traffic by using this empty lane to reach a nearby access road and from there to cross a restaurant parking lot and again connect with the highway.

As Readnour drove the mini-van along this left-most lane, he encountered a Chevrolet Blazer occupied by Jerry Gibson, Jr., Jerry Gibson, III, Mead, and Abbott. According to Readnour, Gibson intentionally maneuvered the Blazer from the line of traffic into the left lane to cut off Readnour's progress. As the Blazer moved forward with the traffic flow and eased back into the right lane, Readnour again moved forward in the now-unobstructed, left lane. Readnour alleged that as he approached the Blazer for a second time, Gibson again intentionally maneuvered the vehicle into the left lane to cut off Readnour's progress. As the Blazer moved slowly forward with the traffic flow and again eased back into the right lane, Readnour made a further attempt to overtake the Blazer. Now, according to Readnour, Gibson intentionally maneuvered the Blazer entirely

into the left lane to obstruct Readnour's progress. "By this time, Carol Ann Readnour was well into a panic attack and was crying and yelling for help for relief from the situation." Complaint at 4.

Readnour alleged that after encountering the Blazer for a third time, he exited his mini-van and yelled at Gibson "to get back into his own lane and quit obstructing [Readhour's] attempt to leave [Orphanage Road]." Id. After the four occupants of the Blazer climbed out, a shouting match erupted on the highway. Readnour alleged that he suddenly felt threatened and returned to the mini-van. Readnour admitted in his deposition that he shoved one of the men as he stood in the roadway.

Once back in the mini-van, and "[i]n an attempt to break the hold" of the four men over him and his wife, Readnour "moved closer to the Blazer at a very slow speed … in an attempt to 'just' touch the Blazer and hopefully get the [the Gibsons, Mead, and Abbott] to reenter their Blazer, move it to the right and allow [the Readnours] to move ahead." Id. at 5. In his deposition, Readnour admitted that he struck the Blazer (significantly damaging both the front bumper and the right head lamp of the mini-van) in an effort to intimidate the occupants of the Blazer.

Finally, "[i]n a continued effort to escape the grasp of these four kidnappers," Readnour backed the mini-van away from the Blazer and turned into the oncoming traffic lane. Id. at 6. In a now desperate attempt to stop the mini-van, Readnour alleged, the Gibsons "dove slightly into the path" of the mini-van, and the van "hit them slightly and brushed them aside." Id. Readnour drove home. Police arrived and cited Readnour with leaving the scene of an accident.

After taking Readnour's deposition, the Gibsons, Mead, and Abbott filed a motion for summary judgment. In an order en-

tered December 4, 2013, the Kenton Circuit Court granted the motion. This appeal followed.

Upon a motion for summary judgment, the trial court must view the record in the light most favorable to the party opposing the motion, and all doubts must be resolved in his favor. *Bear, Inc. v. Smith,* 303 S.W.3d 137 (Ky.App.2010). The trial court examines the evidence not to decide any material issue of fact but to discover if a genuine issue as to any fact exists. *Id.* If no material fact remains in issue, the trial court decides whether the moving party is entitled to judgment as a matter of law. Kentucky Rule[s] of Civil Procedure (CR) 56.03. "An appellate court need not defer to the trial court's decision on summary judgment and will review the issue *de novo* because only legal questions and no factual findings are involved." *Hallahan v. The Courier–Journal,* 138 S.W.3d 699, 705 (Ky.App.2004).

On appeal, Readnour contends that the trial court erred by dismissing his negligence claims. He claims that the appellees' negligence arose from their violation of various state and local traffic laws and that they negligently inflicted emotional damage upon him and his wife. Readnour also argues that the trial court violated his federal rights under the Fifth and Sixth Amendments to the United States Constitution and its Equal Protection and Due Process Clauses.

■ A common-law negligence claim requires proof of: (1) a duty of care owed by the defendant to the plaintiff, (2) breach of that duty, (3) injury to the plaintiff, and (4) legal causation between the defendant's breach and the plaintiff's injury. *Wright v. House of Imports, Inc.,* 381 S.W.3d 209 (Ky.2012).

■ In his complaint, Readnour alleged that he sought damages based upon negli-

gence *per se*. *Negligence per se* "is merely a negligence claim with a statutory standard of care substituted for the common law standard of care." *Real Estate Marketing, Inc. v. Franz,* 885 S.W.2d 921, 926–27 (Ky.1994) *quoting Atherton Condo. Apartment–Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.,* 115 Wash.2d 506, 799 P.2d 250 (1990).

KRS 446.070 provides an avenue by which a damaged party may sue for a violation of a statutory standard of care if the statute in question provides no civil remedy and if the party is within the class of persons whom the statute is intended to protect. *Young v. Carran,* 289 S.W.3d 586, 589 (Ky.App.2008). It provides that "[a] person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation." KRS 446.070.

Pursuant to his complaint, Readnour's *negligence per se* claims are based on violations of KRS 508.030 (assault); KRS 508.040 (assault under extreme emotional disturbance); KRS 508.050 (menacing); KRS 508.070 (wanton endangerment); KRS 508.100 (criminal abuse); KRS 508.140 (stalking); KRS 509.020 (unlawful imprisonment); KRS 509.040 (kidnapping); KRS 189.290 (failure to drive carefully); and KRS 304.47 (insurance fraud). The trial court did not err by concluding that Readnour cannot prevail on any of these claims as a matter of law.

■ The remedy afforded by the provisions of KRS 446.070 is not available with respect to Readnour's allegation that the appellees violated provisions of the Commonwealth's insurance code. KRS 304.47–020 provides for a private right of action—but only where there has been a "criminal adjudication of guilt." There was never any inquiry into the Gibsons' right to seek insurance coverage for the injuries sustained as a result of the incident underlying this appeal, much less a "criminal adjudication" of a fraudulent insurance act as defined by the statute. Since the trial court's disposition of this claim does not merit additional analysis, we shall next address the remaining negligence *per se* claims asserted by Readnour.

■ For purposes of a KRS 446.070–negligence–*per–se* claim, Kentucky's criminal assault provisions define the duty of care to include *refraining* from causing *physical* injury. Readnour has not alleged that he suffered physical injury as a result of the actions of the Appellees Gibson, Abbott, or Mead. Consequently, the trial court did not err by concluding that the appellees were entitled to judgment as a matter of law with respect to the assault claims. In fact, Readnour failed to present sufficient evidence to show that he suffered *any injury* causally related to the appellees' actions. Thus, that failure precludes his recovery on each of the remaining negligence *per se* claims as well.

As the party opposing the appellees' motion for summary judgment, Readnour was required to present some affirmative evidence not only of the appellees' breach of a duty of care, but of an injury and legal causation between the breach and the injury sustained. See *Steelvest, Inc. v. Scansteel Service Center,* 807 S.W.2d 476 (Ky. 1991). As the trial court observed, even Readnour's self-serving descriptions of his "emotional" injury are insufficient to meet this burden because the injury (if any) was minimal; the course of therapy that he prescribed for himself consisted merely of attending church and walking through Home Depot. Under these facts and circumstances, the trial court did not err by concluding that the appellees were entitled to judgment as a matter of law.

■ Readnour also asserted a claim for "loss of personal liberty." Readnour explained that as a result of his encounter with the Gibsons, Abbott, and Mead, he was charged with a criminal offense that caused him to require the services of an attorney and to make several court appearances, resulting in a loss of freedom. As the trial court observed, Readnour's description of his actions during the incident was sufficient to justify the criminal charge (if not others) initiated against him by the Kenton County Attorney. Therefore, the appellees were not the legal cause of whatever loss Readnour claims to have sustained as a result of the criminal charge lodged against him. The trial court did not err by granting summary judgment with respect to this claim in favor of the Gibsons, Abbott, and Meade.

■ Additionally, the trial court did not err by dismissing Readnour's claim for loss of consortium. In his brief, Readnour explains that Carol Ann Readnour was pursuing a dissolution of their marriage at the time of his encounter with the appellees. "Up to the time of this incident," he explains, "[he] was allowed to take Mrs. Readnour to her doctors['] appointments, birthday parties and generally associate with her." However, Readnour alleges that as a direct result of the incident, he is now "completely locked out of association with Mrs. Readnour." He contends that he should be compensated for this loss of Mrs. Readnour's companionship. However, the trial court did not err by dismissing this claim. Much like his claim for "loss of personal freedom," Readnour has not established that the actions of the appellees were the legal cause of his injury.

■ Finally, we address Readnour's claim of negligent infliction of emotional distress. Our careful review of the complaint indicates that Readnour failed to make that claim before the trial court.

Regardless of his omission, it is well established that an action will not lie for negligent infliction of emotional distress absent some showing of physical contact. *Steel Technologies, Inc. v. Congleton,* 234 S.W.3d 920 (Ky.2007). Because the only physical contact alleged in this case was initiated by Readnour against the appellees, the claim, even if properly asserted, would have failed.

Having determined that Readnour could not prevail on any of his claims, we conclude that the trial court did not err by granting summary judgment in favor of the appellees. The appellees were entitled to judgment as a matter of law, and the trial court did not violate Readnour's federal or state constitutional rights by so holding.

The judgment of the Kenton Circuit Court is affirmed.

VANMETER, Judge, concurs.

Judge, CAPERTON, concurs by separate opinion.

CAPERTON, Judge, concurring:

I concur with the result reached by the majority but write separately to express my opinion of those persons who believe they can privately enforce traffic laws. It is apparent from the facts that the Gibsons believed they had the right, as individuals, to enforce our traffic laws. Quite the contrary, they have shown no authority that allows them to enforce traffic laws and, as is apparent from the facts, the Gibsons violated our traffic laws by obstructing a lane of travel on multiple occasions. Their conduct may well be found to have been a factor in precipitating the events that followed.

The blocking of traffic lanes has become prolific on our roads; to this I lend a word of caution. While on many occasions the

operator of the vehicle taking the initiative to avoid the traffic delay is without an excuse or emergency to justify his actions which are violative of traffic laws, there may be times that the violator has a medical emergency or other factual scenario that would justify his actions to use clear lanes or initiate emergency procedures. Those that seek to interfere without authority to do so may find themselves immersed in a legal battle wherein they must justify their actions or bear civil and/or criminal liability.